J-S32045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DON CARVICA HOGUE | : | |
| | : | |
| Appellant | : | No. 1049 EDA 2017 |

Appeal from the Judgment of Sentence March 3, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006741-2014

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED AUGUST 05, 2019**

Don Carvica Hogue (Appellant) appeals *pro se* from the judgment of sentence imposed after a jury convicted him of aggravated assault, possession of an instrument of crime (PIC), and recklessly endangering another person (REAP).[1] Upon review, we affirm.

The charges in this case arise from an incident that occurred on March 16, 2014, in which Appellant "viciously stabb[ed] and nearly kill[ed] a man[.]" Trial Court Opinion, 6/28/18, at 1-2. The Commonwealth filed a criminal information on June 13, 2014. Thereafter, Appellant filed a suppression motion, seeking to preclude "the Commonwealth from playing the cell phone recording" made by his adult daughter, Rashada Siojo. Omnibus Pretrial

---

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), and 2705.

Motion, 4/25/16, at 1-3. After conducting a hearing on June 17, 2016, the trial court denied the motion. The case proceeded to trial. On December 16, 2016, a jury convicted Appellant of the above crimes.

At sentencing on March 3, 2017, the trial court determined that Appellant's conviction of aggravated assault was his fifth crime of violence under Section 9714 of the Sentencing Code. *See* 42 Pa.C.S.A. § 9714(a) (mandatory minimum sentences for second and third convictions of crimes of violence). Accordingly, the trial court imposed a sentence of life imprisonment without parole. *See* 42 Pa.C.S.A. § 9714(a)(2) ("Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole."). The court further sentenced Appellant to 2½ to 5 years of imprisonment for PIC and 1 to 2 years of imprisonment for REAP, both consecutive to the life sentence.

Appellant, who was represented by Mark Adams, Esquire, did not file a post-sentence motion, but instead filed a *pro se* petition under the Post Conviction Relief Act.[2] The trial docket reflects this "filing from a represented defendant not signed by attorney."[3] Trial Docket Entry, 3/16/17. On March

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3] *See* Pa.R.Crim.P. 576(A)(4) (if a represented criminal defendant submits for filing a written motion that has not been signed by his attorney, the clerk of courts shall accept it for filing, and a copy of the time-stamped document shall

20, 2017, Attorney Adams filed a timely notice of appeal together with a motion to withdraw as counsel. On March 22, 2017, the trial court allowed Attorney Adams to withdraw, and James Lloyd, Esquire, entered his appearance on behalf of Appellant. On April 12, 2017, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and following two extensions for additional time, Attorney Lloyd filed a statement on behalf of Appellant on November 8, 2017.

Meanwhile, Appellant filed in Superior Court a *pro se* application to proceed *pro se* on appeal. By *per curiam* order dated October 10, 2017, this Court directed the trial court to conduct a **Grazier**[4] hearing. The trial court conducted the hearing on November 13, 2017 — subsequent to Attorney Lloyd filing Appellant's Rule 1925(b) statement — and thereafter granted Appellant's motion to proceed *pro se*, along with permission for Attorney Lloyd to withdraw from representation. On December 7, 2017, Appellant filed an untimely *pro se* Rule 1925(b) statement, without first obtaining leave from the trial court to do so. The trial court issued an opinion on June 28, 2018.

On appeal, Appellant presents three multi-part issues for our review:

---

be forwarded to the defendant's attorney and the Commonwealth within 10 days); **Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011) ("[T]he proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion.").

[4] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

1. WERE APPELLANT'S FEDERAL FOURTH AND FOURTEENTH AMENDMENT RIGHTS VIOLATED AND DID THE LOWER COURT ERR AS A MATTER OF LAW AND/OR ABUSE DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS INTERCEPTED WIRE OR ORAL COMMUNICATION WHERE EXCEPTION NO. 17 OF THE WIRETAP ACT IS VOID FOR VAGUENESS ON ITS FACE AND AS-APPLIED TO APPELLANT'S CASE, AND/OR DESPITE THE SELF-CONTRADICTORY TESTIMONY OF AN ASSISTANT DISTRICT ATTORNEY DURING THE SUPPRESSION HEARING, AND/OR DESPITE A SUPPRESSION RECORD REPLETE WITH EVIDENCE OF STATE ACTION BY THE ADA IN COLLUDING WITH APPELLANT'S [SIC] TO INTERCEPT APPELLANT'S WIRE AND ORAL COMMUNICATION?

2. WAS IT A DENIAL OF APPELLANT'S FEDERAL SIXTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 9 STATE CONSTITUTIONAL RIGHT, AND WAS THE TRIAL COURT'S SUBJECT MATTER JURISDICTION NOT LAWFULLY INVOKED TO AUTHORIZE IT TO HEAR APPELLANT'S CASE BASED ON A FATALLY DEFECTIVE INFORMATION WHICH FAILED TO GIVE FORMAL AND SPECIFIC ACCUSATION OF JURISDICTIONALLY-REQUIRED ESSENTIAL FACTUAL ELEMENTS, *I.E.*, MISCONDUCT, "TO WIT: BY STABBING THE VICTIM" AS MANDATED BY THE SIXTH AND FOURTEENTH AMENDMENTS, PA.R.CRIM.P. 560(B)(5), AND CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES AND PA. STATE SUPREME COURT, THEREBY ENABLING APPELLANT TO PREPARE A DEFENSE AND PLEAD DOUBLE JEOPARDY, AND FURTHER ENABLING THE TRIAL COURT (AND ANY SUBSEQUENT COURT) TO REVIEW FACTS FROM THE FACE OF THE INFORMATION SUFFICIENT TO SUPPORT A CONVICTION FOR AGGRAVATED ASSAULT?

3. WAS APPELLANT DEPRIVED ON HIS SIXTH, TENTH, AND FOURTEENTH AMENDMENT RIGHTS AND CONTRACT CLAUSE RIGHTS UNDER THE FEDERAL CONSTITUTION WHERE APPELLANT WAS NOT GIVEN NOTICE OF THE "THREE STRIKES" SENTENCING PROVISION IN THE INFORMATION, AND/OR WHERE THE IMPOSITION OF THE "THIRD STRIKE" LIFE SENTENCE WAS BASED ON A STATE STATUTE COERCED AND COMPELLED BY THE FEDERAL REGULATORY PROGRAM OF VOITIS, AND/OR WHERE 42 PA.C.S. § 9714 IS MODELED ON A DETERMINATE SENTENCING SCHEME WHICH MAKES A 25 YEAR MAXIMUM SENTENCE THE LEAST ONEROUS SENTENCE THAT CAN BE IMPOSED BASED ON

THE BARE STATUTORY ELEMENTS OF A "THIRD STRIKE" OFFENSE, AND/OR WHERE THE LIFE SENTENCE IMPOSED WAS BASED ON OTHER SENTENCING FACTORS NOT CHARGED IN THE INFORMATION, SUBMITTED, AND PROVEN TO A JURY BEYOND A REASONABLE DOUBT AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS?

Appellant's Brief at 2.

Throughout his first issue, Appellant presents an imprecise and often confusing argument regarding the court's denial of his suppression motion.[5] For example, he argues that Subsection 17 of 18 Pa.C.S.A. § 5704, regarding exceptions to the prohibition of interception and disclosure of communications, is facially void for vagueness and ambiguity.[6] Appellant's Brief at 6-9. We note that generally, "no person shall disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any proceeding in any court[.]" 18 Pa.C.S.A. § 5721.1. However, Section 5704 sets forth several exceptions, including Subsection 17:

It shall not be unlawful and no prior court approval shall be required under this chapter for . . .

---

[5] We remind Appellant that "appellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure," and "[a]lthough this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Commonwealth v. Adams***, 882 A.2d 496, 497-98 (Pa. Super. 2005) (some citations omitted).

[6] We recognize that a subpart of the Wiretap Act, not relevant to this appeal, has been preempted by the Federal Wiretap Act. ***Commonwealth v. Witmayer***, 144 A.3d 939, 950 n.2 (Pa. Super. 2016); ***see also Bansal v. Russ***, 513 F.Supp.2d 264 (E.D.Pa. 2007).

Any victim, witness or private detective licensed under the act of August 21, 1953 (P.L. 1273, No. 361), known as the Private Detective Act of 1953, to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S.A. § 5704(17).

Appellant's challenge to the validity of this subsection was not raised in the timely, court-ordered Rule 1925(b) statement filed by Attorney Lloyd, and the trial court did not address the issue. Although Appellant included this issue in his subsequent *pro se* Rule 1925(b) statement, Appellant never asked the court for leave to file a supplemental statement. **See** Pa.R.A.P. 1925(b)(2) ("Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed."). Thus, this claim is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); see also Pa.R.A.P. 302(a) (issues not raised with the lower court are waived on appeal).

Also within his first issue, we discern the following claims: this Court should find that the Wiretap Act's definition of an "electronic, mechanical or

other device" includes a telephone[7]; and the suppression court made improper credibility findings in denying suppression where "someone knowledgeable of the parameters of the Wire Tap Act advis[ed] Appellant's daughter in the matter." Appellant's Brief at 9-13. With respect to the recorded telephone call, Appellant asserts "it is clear that ADA Nixon and Mark Gilson both engaged in 'state action' . . . and it is wholly unfathomable [that] neither one of them, especially ADA Nixon, did not tell Appellant's daughter to get some proof." *Id.* at 13-14. No relief is due.

Appellant first asks this Court to hold that for purposes of the Wiretap Act, the definition of an "electronic, mechanical or other device" includes a telephone. Appellant's Brief at 11. "Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Hall*, 80 A.3d 1204, 1211 (Pa. 2013). Section 5702 defines "Electronic, mechanical or other device" as follows:

> Any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication **other than**:
>
> > (1) **Any telephone** or telegraph instrument, equipment or facility, or any component thereof, furnished to the subscriber or user for connection to the facilities of such service and used in the ordinary course of its business, or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law

---

[7] **See** 18 Pa.C.S.A. § 5702 (defining "electronic, mechanical or other device" as used in the Wiretap Act).

> > enforcement officer in the ordinary course of his duties. . . .

18 Pa.C.S.A. § 5702 (emphasis added).

We deny Appellant's request to find that a telephone is included in the Wiretap Act's definition of an "electronic, mechanical or other device." To the contrary, a plain reading[8] of Section 5702 evidences the General Assembly's clear intent to purposefully exclude telephones from the definition, and our Supreme Court has held the same. *See Commonwealth v. Spence*, 91 A.3d 44, 47 (Pa. 2014) ("The language of the statute states that telephones are exempt from the definition of device."). Therefore, Section 5702's definition of "electronic, mechanical or other device" excludes telephones.

Next, Appellant assails the trial court's findings following the June 17, 2016 suppression hearing, with specific reference to the court's credibility findings and its determination that there was no improper state action on the part of Assistant District Attorney Deborah Nixon and her colleague, Mark Gilson. Appellant's Brief at 12-14.

Our review of the denial of a suppression motion "is limited to determining whether the factual findings are supported by the record and

---

[8] "We will only look beyond the plain meaning of the statute when words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.[A.] § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning." *Commonwealth v. Torres-Kuilan*, 156 A.3d 1229, 1231 (Pa. Super. 2017) (some citations omitted).

whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Soto*, 202 A.3d 80, 90 (Pa. Super. 2018) (citation omitted). "When reviewing the denial of a suppression motion, this Court reviews only the suppression hearing record, and not the evidence elicited at trial." *Commonwealth v. Frein*, 206 A.3d 1049, 1064 (Pa. 2019) (citation omitted). Further:

> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Moreover, it is within the [trial] court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

*Id.* "The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

Mindful of the foregoing, we recognize that "[t]he Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). However, it is well-settled that the "proscriptions of the Fourth Amendment and Article I, § 8, do not apply to searches and seizures conducted by private individuals." *Commonwealth v. Shaffer*, --- A.3d ---, 2019 WL 2509345, *11 (Pa. 2019) (citation omitted). "[A]t the core of the reasoning underlying this refusal to

extend application of the exclusionary rule to private searches is the concept of 'state action,' the understanding that the Fourth Amendment operates only in the context of the relationship between the citizen and the state." *Id.* (citation omitted).

"In the absence of governmental action, the search or seizure in question cannot give [an a]ppellant ground for a claim of violation of constitutionally-protected interest under either the Federal or Pennsylvania Constitutions." *Commonwealth v. Johnson*, 727 A.2d 1089, 1098 (Pa. 1999) (citation omitted). "To determine whether a particular search or seizure constituted governmental action, we must examine the purpose of the search, the party who initiated it, and determine whether the government acquiesced in it or ratified it." *Id.* "Moreover, individual acts do not become imbued with the character of governmental action merely because they are later relied upon and used by the government in furtherance of their objectives." *Id.*

Here, Appellant sought to suppress evidence from a telephone conversation recorded by his adult daughter, Rashada Siojo. At the suppression hearing, the Commonwealth presented testimony from Ms. Siojo and Ms. Siojo's friend and assistant district attorney, Deborah Nixon. Appellant did not present any witnesses.

Ms. Siojo testified that on the morning after the stabbing, she spoke with her mother by telephone. Ms. Siojo's mother was crying and she told her daughter that "there was some kind of altercation"; Ms. Siojo's mother "was

afraid" and asked Ms. Siojo to pick her up. N.T., 6/17/16, at 19, 22. Ms. Siojo then called her friend, Ms. Nixon, "to tell her what was going on because [Ms. Nixon was her] friend" and Ms. Siojo was worried about her mother *Id.* at 19.

Later that day, while Ms. Siojo and her younger brother were driving to get their mother, Ms. Siojo engaged in a telephone call with her mother and Ms. Nixon, which began as a call between just Ms. Siojo and her mother. *Id.* at 22. Ms. Siojo described her mother during this call as "probably not sober," and Ms. Siojo "heard a lot of yelling and arguing in the background . . . between [her mother and Appellant]." *Id.* at 24. Ms. Siojo testified that **she added Ms. Nixon to the call because Ms. Nixon was her friend**, not because Nixon was an assistant district attorney, **and she wanted to let Ms. Nixon know where she was going because Ms. Siojo "didn't know what [she] was going into**." *Id.* at 22-23. Ms. Siojo did not speak directly with Appellant during this call, and did not record the call.

After picking up her mother, and while driving with her mother and younger brother in the car, Ms. Siojo had a telephone conversation with Appellant, which was connected to the car's Bluetooth.[9] N.T., 6/17/16, at 25-27. Ms. Siojo testified that she "borrowed" her brother's telephone to record the conversation because she was afraid, "didn't know what was true and . . .

_____

[9] Ms. Siojo testified that she did not remember whether Appellant called her or she called him. N.T., 6/17/16, at 26.

needed to be safe." *Id.* at 27-28. Ms. Siojo stated that she asked Appellant "what happened?" and "why did you do that to that man?", and reiterated that she was afraid for herself and her mother. *Id.* at 26-28. She also testified repeatedly that no one instructed her to record the conversation, and Ms. Nixon was "absolutely not" aware that Ms. Siojo recorded the Bluetooth call with Appellant. *Id.* at 28-29, 34. Ms. Siojo also clarified that the earlier call between her, her mother, and Ms. Nixon was **not** recorded. *Id.* at 33.

The Commonwealth called Ms. Nixon, who has been employed as an assistant district attorney since 1992. Ms. Nixon testified that Ms. Siojo was her friend, and on the morning of March 17, 2014, Ms. Siojo called her and relayed that Ms. Siojo's mother had told her that Appellant "admitted to her that he had stabbed a man," that Ms. Siojo was "terrified for her mother," and "there was a situation unfolding where there were threats of violence toward her mother." N.T., 6/17/16, at 53-54. During the conversation, Ms. Nixon "calmed [Ms. Siojo] down . . . and told her I'd speak to her later." *Id.* at 55.

Later that day, when Ms. Nixon was at work, she received a second phone call from Ms. Siojo, and could hear "chaos erupting." N.T., 6/17/16, at 56. Ms. Siojo told Ms. Nixon, "I'm on my way to my mother's and my mother's in trouble"; Ms. Nixon told Ms. Siojo not to go and instead call the police. *Id.* Meanwhile, Ms. Nixon could hear "chaos," "commotion," and "yelling and screaming." *Id.* at 55-56. Ms. Nixon heard a male and a female, but did not know the male voice and could not "make out what's being said." *Id.* at 56,

- 12 -

59, 61. Ms. Nixon then set her telephone on speaker mode so that her colleague Mark Gilson could hear the conversation. Ms. Nixon asked Mr. Gilson to "send the cops wherever the mother lives." *Id.* at 57. Mr. Gilson used his own telephone to call 911 and request a police dispatch to the mother's location. *Id.* at 57-58. Ms. Nixon testified that she "absolutely [did] not" advise Ms. Siojo to "make a recording of any of this," and she never looked at the file for the criminal case against Appellant. *Id.* at 57-58. She emphasized:

> My focus was on the domestic incident with [Ms. Siojo's] mother and [Ms. Siojo] not getting involved with it at all. This young girl does not need to be pulled into some mess with her father and her mother, some violence with her father and mother.

N.T., 6/17/16, at 57-58.

During the suppression hearing, Appellant, who was represented by Attorney Adams, presented no evidence, but claimed that he had a reasonable expectation of privacy in the "family conversation" with Ms. Siojo's mother, which was heard by Ms. Siojo during the three-way call between Ms. Siojo, her mother, and Ms. Nixon. N.T., 6/17/16, at 64-65. Appellant argued that the exception in the Wiretap Act, as stated in Subsection 5704(17) — allowing interception if the interceptor is under a reasonable suspicion that the intercepted party is committing, about to commit, or has committed a crime of violence — should be ruled unconstitutional. *Id.* at 65; *see* 18 Pa.C.S.A. § 5704(17).

The Commonwealth countered that Appellant's argument was

"specious" because the **unrecorded** call in which Appellant is yelling in the background while Ms. Siojo is talking to her mother "and the daughter who happens to merge in Deb Nixon . . . is not protected under the Wiretap Act." N.T., 6/17/16, at 68. The Commonwealth also argued that Ms. Siojo's recording of her subsequent conversation with Appellant was squarely within the Wiretap Act exception at Section 5704(17). *Id.* at 66.

The trial court denied Appellant's suppression motion, finding that the Commonwealth's witnesses were credible and its argument persuasive. Appellant, on appeal, now askes "th[is] Court to find the lower court's findings . . . are an abuse of discretion." Appellant's Brief at 13. Appellant claims that "ADA Nixon and Mark Gilson both engaged in 'state action'", asserting that it is "wholly unfathomable to neither one of them, especially ADA Nixon, did not tell the daughter to get some proof." *Id.* at 14. Essentially, Appellant claims that Ms. Siojo improperly recorded the conversation with Appellant at the prompting of Ms. Nixon in her capacity as a district attorney. *Id.* This argument lacks merit.

As discussed, Ms. Siojo testified that she did not record the conversation between herself, her mother (in which Appellant could be heard in the background), and Ms. Nixon. Ms. Siojo stated that she added Ms. Nixon to the call because Ms. Nixon was a friend, and while on her way to get her mother, Ms. Siojo was concerned for the safety of her mother and herself. With regard to the conversation with Appellant that Ms. Siojo recorded on her

brother's phone from her car's Bluetooth, Ms. Siojo likewise testified that "nobody related to law enforcement" was "in on that call" — and she recorded the conversation with Appellant because she "needed to be safe" and "was afraid for me and my mother." N.T., 6/17/16, at 27-28. Ms. Siojo testified repeatedly that no one told her to record the conversation, and Ms. Nixon was unaware that she was recording it. *Id.* at 28-29, 34. Ms. Nixon's testimony corroborated Ms. Siojo's, where Ms. Nixon stated that she did not advise Ms. Siojo to record her conversation with Appellant, was not involved in Appellant's criminal case, and "her whole concern [was for] Ms. Siojo and her safety." *Id.* at 57-59.

The burden of proof at a suppression hearing is on the Commonwealth to "establish[] that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). "This does not, however, excuse the defendant from meeting the burden of persuasion[.]" ***Commonwealth v. Enimpah***, 62 A.3d 1028, 1033 (Pa. Super. 2013). Appellant has not persuaded us of any error, and emphasize that "it is within the [trial] court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony." ***Frein***, 206 A.3d at 1064.

Instantly, the trial court stated, "I find specifically in terms of the findings of facts as testified to by the witnesses to be credible." N.T., 6/17/16, at 69. The trial court further concluded that "there was no state action

involved through Ms. Nixon in any way, shape, or form." *Id.* Upon review, we agree. Appellant's first issue lacks merit.

In his second issue, Appellant argues that the trial court lacked subject matter jurisdiction and "Tenth Amendment sovereign state police power to hear [his] case," because the criminal information lacked sufficiency. Appellant's Brief at 14-15. He also claims the trial "court failed to address the assertion that the Commonwealth's prosecution of Appellant under the federal mandates of the Violent Offender Incarceration and Truth In Sentencing (VOITIS) Incentive Grant Program, 12 U.S.C. § 12101 et seq., . . . was a violation of Appellant's personal Tenth and Fourteenth Amendment rights." *Id.* at 14. Appellant contends that the alleged "'cutting or stabbing' of the victim is an essential factual element of the [aggravated assault charge] establishing the essential *mens rea*/culpability element of malice," but the information did not "charge any 'acts,' 'facts,' 'conduct,' or 'misconduct' to establish malice." *Id.* at 17. Appellant thus concludes that he was deprived of his Sixth and Fourteenth Amendment rights to notice and due process.

In his third issue, Appellant argues that his rights under the United States and Pennsylvania Constitutions were violated when he was not given notice **in the bill of information** filed by the Commonwealth of its intention of prosecuting him under the "three strikes" mandatory minimum sentencing parameters in 42 Pa.C.S.A. § 9714(a). Appellant further asserts that Section 9714 provides for an illegal sentencing scheme in light of the United States

Supreme Court's holding in **Apprendi v. New Jersey**, 120 S. Ct. 2348 (U.S. 2000) and its progeny.

Upon review of Appellant's second and third issues, together with the record and prevailing legal authority, we conclude that the Honorable Ann Marie B. Coyle, sitting as the trial court, has authored a comprehensive opinion addressing and disposing of these issues. Accordingly, we adopt those portions of Judge Coyle's opinion as our own. Trial Court Opinion, 6/28/18, at 12-15, 15-20.

We note that in addressing Appellant's second issue, the trial court accurately states that the Commonwealth's information "was signed by the District Attorney, contained a proper caption, the date of the offense, the name of the victim, the county where the offense took place, a plain and concise statement of the essential elements of each offense, and a proper concluding statement." Trial Court Opinion, 6/28/18, at 15. The trial court thus concluded that the information was "sufficient for [Appellant] to address the charges and prepare a defense," and accordingly, the court had proper subject matter jurisdiction over Appellant's criminal prosecution. **Id.**; **see also** Pa.R.Crim.P. 560 (Information: Filing, Contents, Function).

In addressing Appellant's third issue, the trial court referenced the notice requirements of 42 Pa.C.S.A. § 9714, and explained that Appellant received notice of the Commonwealth's intent to pursue a "three strike" mandatory minimum sentence in its sentencing memorandum filed February

10, 2017 — well before Appellant's sentencing nearly a month later in March 2017. Trial Court Opinion, 6/28/18, at 18; *see also* 42 Pa.C.S.A. § 9714(d) ("[R]easonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.").

Further, in addressing the legality of Appellant's sentence, the trial court accurately concludes that Appellant fails to state a viable claim for relief under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Alleyne v. United States*, 570 U.S. 99 (2013), and successive Pennsylvania cases. The trial court explained:

> [Appellant's] argument also fails as *Apprendi* and its progeny[] all exclude prior convictions from what is required to be submitted to the jury when seeking to increase a sentence.
>
> * * *
>
> [T]he Superior Court has recognized that *Alleyne* does not invalidate mandatory minimum sentencing statutes that pertain to a defendant's prior convictions. Section 9714 increases mandatory minimum sentences based on prior convictions. Accordingly, this section is not unconstitutional under *Alleyne*.").

Trial Court Opinion, 6/28/18, at 18-19 (citing *Commonwealth v. Watley*, 81 A.3d 108 (Pa. Super. 2013)). *See also Apprendi*, *supra* ("Other than the fact of a **prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

In sum, Appellant's claims do not merit relief, and we affirm the judgment of sentence. Because we have partially adopted the trial court's

opinion, we direct the parties to include it in relevant future filings.

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/19

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF          :          CP-51-CR-0006741-2014
PENNSYLVANIA
                    CP-51-CR-0006741-2014 Comm. v Hogue, Don Carvica
                                   Opinion

vs.

                    ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
                         8129940841          SUPERIOR COURT
DON CARVICA HOGUE        :          NO. 1049 EDA 2017

OPINION

**FILED**

COYLE, J.          JUN 28 2018          JUNE 28, 2018

Appeals/Post Trial
Office of Judicial Records

Appellant, Don Carvica Hogue, the above-named Defendant, seeks review of the Order and

Judgment of Sentence imposed on March 3, 2017 by the Honorable Anne Marie Coyle, Judge of the

Court of Common Pleas for the First Judicial District Criminal Division. Within his Statement of

Matters Complained Of On Appeal Pursuant to Pa. R. P. 1925(b), Appellant essentially asserted

three claims of alleged error. A full and fair review of the record reflected that each claim was

without merit.

I.     **FACTUAL AND PROCEDURAL HISTORY**

On March 18, 2014, the Defendant, Don Carvica Hogue, was arrested and was charged with

*inter alia*, Aggravated Assault[1], Simple Assault[2], Recklessly Endangering Another Person[3], and

---

[1] 18 Pa. C.S.A. § 2702

[2] 18 Pa. C.S.A. § 2701

Possession of an Instrument of Crime[4] for viciously stabbing and nearly killing a man following a disagreement over the use of a cigarette lighter that occurred on March 16, 2014, in the vicinity of the 4600 block of Frankford Avenue in the City and County of Philadelphia. A jury trial was conducted before this Court beginning on December 13, 2016.

At the conclusion of trial, the Defendant was found guilty of Aggravated Assault, Recklessly Endangering Another Person, and Possession of an Instrument of Crime. Sentencing was deferred pending a pre-sentence report and mental health evaluation. On March 3, 2017, after full and fairly conducted hearing, this Court, pursuant to §9714, imposed a sentence of life imprisonment without the possibility of parole on the first degree felony charge of Aggravated Assault. As to the offense of Possessing An Instrument of Crime, this Court imposed a consecutive sentence of two and one half (2½) years to five (5) years of incarceration, followed by one (1) year to two (2) years of incarceration for Recklessly Endangering Another Person. The Commonwealth of Pennsylvania was represented a during pre-trial motions, at trial and during sentencing by then District Attorney of Philadelphia, by and through his Assistant District Attorney Edward Grant, Esquire. Mark W. Adams, Esquire represented Appellant during pre-trial motions, at trial and during sentencing.

Attorney Adams filed a Notice of Appeal and a *Motion to Withdraw as Counsel* on March 20, 2017.[5] Attorney Adams' motion to withdraw was granted on March 22, 2017 and James Richard Lloyd, III, Esquire, was appointed. A Statement of Errors Complained of on Appeal pursuant to Pa.

---

[3] 18 Pa. R.C.A. § 2705

[4] 18 Pa. C.S.A. § 907

[5] On March 10, 2017, the Defendant filed a *pro se* Post-Conviction Relief Act (PCRA) petition. This petition was subsequently dismissed as premature on November 9, 2017.

2

R.A.P. Rule 1925 (b) was ordered by this Court on April 12, 2017. The notes of testimony became available, and a Statement of Errors Complained of on Appeal was again ordered by this Court on November 3, 2017. On November 8, 2017, Attorney Lloyd filed a Statement of Errors Complained of on Appeal. On November 13, 2017, the Defendant was permitted to precede *pro se* and Attorney Lloyd was permitted to formally withdraw. On December 7, 2017, the Defendant filed a *pro se* Statement of Errors Complained of on Appeal.

## II.    ISSUES ON APPEAL

In summary, Defendant (hereinafter "Appellant") raised the following issues on appeal:

1.    The Court erred and abused its discretion in denying Appellant's Motion to Suppress illegally and unconstitutionally intercepted wire and oral communications between Appellant, his wife, and his daughter which was overheard by Assistant District Attorney [Deborah] Nixon when Appellant's daughter put ADA Nixon on three-way calling; the Court erred by finding no State action when the suppression record is replete with evidence of state action by the ADA in colluding with Appellant's daughter to intercept Appellant's wire and oral communication without his consent.

2.    Appellant was denied his Sixth and Fourteenth Amendment rights and Article I, Section 9 State Constitutional right as the trial court lacked subject matter jurisdiction based on fatally defective bills of information which failed to give formal and specific jurisdictional accusations; the bill of information lacked essential factual elements of misconduct on its face thereby rendering the bill of information insufficient to support a conviction of aggravated assault.

3.    Appellant was deprived of his Sixth, Tenth, and Fourteenth Amendment rights and Contract Clause rights under both the United States and Pennsylvania Constitutions where Appellant

3

was not given notice of a possible "three strikes" sentence in the bill of information.

## III. DISCUSSION

### A. Motion to Suppress

The appellate court's standard of review of a denial of a motion to suppress is to determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Commonwealth v. Moye, 836 A.2d 973 (Pa. Super. 2003) *quoting* Commonwealth v. McClease, 750 A.2d 320, 323 (Pa. Super. 2000). The scope of review is limited; the appellate court may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." Id. *quoting* Commonwealth v. Maxon, 798 A.2d 761, 765 (Pa. Super. 2002). Where the record supports the findings of the suppression court, the appellate court is bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. Moye, *supra., quoting* McClease, 750 A.2d at 323-24 *quoting* In the Interest of D.M., 560 Pa. 166, 743 A.2d 422, 424 (1999).

In the instant case, Appellant argued that this Court erred and abused its discretion in denying his motion to suppress by finding that there was no State action performed by Assistant District Attorney Deborah Nixon, Esquire (hereinafter "ADA Nixon") when she allegedly, in violation of the Wiretap Act, "illegally and unconstitutionally intercepted wire and oral communications" between Appellant, his wife, and his daughter which was overheard by ADA Nixon when Appellant's daughter put ADA Nixon on three-way calling with them. According to Appellant, the Court erred by finding that exception number 17 of the Wiretap Act applied when, as alleged by

4

Appellant, ADA Nixon "colluded" with Appellant's daughter when Appellant's daughter called ADA Nixon and placed ADA Nixon on a three-way call while his daughter was on a call with her mother (and ADA Nixon overheard an alleged argument between Appellant and her mother). This argument failed because it was factually and legally flawed.

The purpose of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701, *et seq.*, is the protection of privacy. Commonwealth v. Spence, 631 A.2d 666 (Pa. Super. 1993). The Act makes it unlawful for a person to intentionally intercept, endeavor to intercept, or procure any other person to intercept or to endeavor to intercept any wire, electronic, or oral communication. 18 Pa.C.S.A. §5703(1). However, the statute also contains specific exceptions to the prohibitions outlined in § 5703. In pertinent part, "It shall not be unlawful and no prior court approval shall be required under this chapter for:"

> (17) Any victim, witness or private detective licensed under the act of August 21, 1953 (P.L. 1273, No. 361), known as The Private Detective Act of 1953, to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception

18 Pa.C.S.A. §5704(17).

Relying on Commonwealth v. Deck, 954 A.2d 603, 607 (Pa.Super.2008), Appellant argued that his daughter (Rashada Siojo) illegally recorded their telephone conversation without his consent and the trial court should have granted his suppression motion. His reliance on Deck however is *inapposite*. In Deck, the Superior Court interpreted the Wiretap Act to preclude the admission of a conversation between a sexual assault victim and the defendant, which the former had recorded

5

without the latter's consent. The Deck decision involved no more than the affirmation of the trial court's suppression of the recorded telephone conversation. It did not specifically discuss whether the sexual assault victim could testify about her conversation with the defendant.

In Commonwealth v. Torres, No. 2130 EDA 2012, 2014 WL 10917671 (Pa. Super. Ct. June 30, 2014) (NON–PRECEDENTIAL DECISION), the Superior Court found that the trial court did not err in permitting [J.B.] to testify regarding the contents of a taped conversation between [J.B., the victim, and appellant] in contravention of the Wiretapping and Electronic Surveillance Control Act, including threats against family members of [J.B. and the victim]. Torres at *2. The Torres Court found that the recording of a conversation made without [Appellant's] consent violated the Pennsylvania Wiretap Act and was not admissible as evidence. [18 Pa.C.S.A. § 5703], however while the recording may not have been used, there is no bar against participants of conversations testifying as to what they heard themselves. A statement offered against a party that is the party's own statement in either an individual or a representative capacity, is an Admission by Party–Opponent and is an exception to the hearsay rule. [Pa.R.E. 803(25)].

Therefore, although the actual recording was not admissible, J.B. could still testify as to the threats she herself heard [Appellant] make under the Admission by Party–Opponent exception to the hearsay rule. J.B.'s testimony regarding Appellant's threats to the victim and J.B. prior to the incident leading to the victim's death, was admissible to prove the history and factual development of the case, and, in light of J.B.'s testimony about the beatings Appellant inflicted on both women, was not unduly prejudicial. See, e.g., Commonwealth v. Antidormi, 2014 WL 255492 (Pa.Super.2014) (reiterating that courts are not required to sanitize a trial to eliminate all unpleasant facts from the

6

jury's consideration where those facts are relevant, and form the history and natural development of the events and offenses for which the defendant is charged). Torres, *supra*, at *3.

In Commonwealth v. Spence, 625 Pa. 84, 87–88, 91 A.3d 44, 46 (2014), the Pennsylvania Supreme Court unanimously found that the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. §§5701 *et seq.*, does not prohibit the surreptitious interception of private communications, so long as the interception is accomplished using a telephone.[6] Specifically, the Court concluded that telephones (whether smartphones, mobile phones or landline phones), are excluded from the Act's definition of electronic, mechanical or other devices because the Pennsylvania Wiretap Act only prohibits the "interception" of private communications using electronic, mechanical or other devices, the Court reasoned that the Act does not prohibit or otherwise limit the interception of private communications using telephones. Furthermore, the Court stated that:

> The Wiretap Act provides for exclusion of evidence derived from intentional interception of a "wire, electronic or oral communication" without prior approval under procedures not employed in the present case. 18 Pa.C.S. §§ 5703, 5721.1. The Act defines "intercept[ion]" as the "acquisition of the contents of [such] communication through the use of any electronic, mechanical, or other device." 18 Pa.C.S. § 5702. The definition of "electronic, mechanical, or other device", in pertinent part, is as follows:
> "**Any device** or apparatus ... that can be used to intercept a communication **other than** ... (1) **Any telephone** ... or any component thereof, **furnished to**

---

[6] In *Spence*, a state trooper used an arrestee's mobile phone to call Spence (the arrestee's drug supplier), then handed the phone to the arrestee and directed him to activate its speaker function so the trooper could eavesdrop on the conversation between Spence and the arrestee. During the conversation Spence incriminated himself and was arrested and charged with various drug offenses.

Following his arrest, Spence argued the evidence against him should be suppressed because the state trooper who secretly listened in on his cell phone conversation did so in violation of the Pennsylvania Wiretap Act. The Pennsylvania Supreme Court however, found that the way or by whom a telephone is used to record or otherwise intercept communications is immaterial – the Act does not prohibit the use of telephones to intercept communications, period: "the language of the statute does not state that it is the use to which the telephone is being put which determines if it is considered a device."

7

**the subscriber or user** by a provider of wire or electronic communication service in the ordinary course of its business...."

18 Pa.C.S. § 5702 (emphasis supplied).

The Supreme Court's view was that the statutory exclusion of telephones from the Act's definition of "electronic, mechanical or other device[s]" appears intended to convey only that when people use their telephones to communicate with others in the ordinary course of their business or day-to-day activities, they are not at risk of violating the Act. If the legislature intended otherwise, there would be little reason to carve out specific statutory exceptions for telephone marketers and utility providers who wish to record their telephone conversations. Moreover, following Deck, the Pennsylvania Legislature added exception 17 to the statute. *See* 2012 Pa. Legis. Serv. Act 2012-202 (H.B. 2400). As such, the recording Ms. Siojo made falls squarely within the exception and the motion was properly denied.

The second portion of Appellant's argument similarly failed. According to Appellant, the Court erred by finding no State action when the suppression record is replete with evidence of state action by the ADA in colluding with Appellant's daughter to intercept Appellant's wire and oral communication without his consent. Despite his argument to the contrary, the record belies Appellant's allegations of "State Action" by ADA Nixon or anyone else in law enforcement in illegally and unconstitutionally intercepting his wire and oral communications. ADA Nixon was never on the telephone when Appellant was on the phone with his daughter, nor did she request Appellant's daughter to record her father's conversation.

The instant record revealed that on March 17, 2014, Rashada Siojo, Appellant's daughter, had secretly recorded a telephone conversation via Bluetooth speaker with her father, Appellant,

8

while she was in her car with her mother and her brother; ADA Nixon was not listening in on the conversation, nor did she instruct Ms. Siojo to record her conversation with Appellant as evidenced below:

BY MR. GRANT: Q. That phone call that you are having -- were you communicating with him on the phone in your hand? Was it on speaker? Something else?
A. My phone was connected to my Bluetooth in the car.
Q. Okay. While you were having that conversation with your dad, what, if anything, did you do?
A. I borrowed my brother's phone and I recorded our conversation.
Q. Okay. While you were recording that conversation, *was anybody related to law enforcement at all in on that call?*
A. *Oh, no, not at all.*

*          *          *

Q. Okay. *At any point did anybody instruct you to make this recording?*
A. *Absolutely not.*
Q. *Did anybody even know that you were making the recording outside of the people in that vehicle?*
A. *No.*

(N.T., 6/17/16, pp. 27-29). [emphasis added]

*          *          *

BY MR. GRANT: Q. That second call that you made *when you three-wayed Deb and your mom -- at any point was that conversation connected to this recording in any way?*
A. *No.*
Q. The third time that you made what we'll call the relative phone call that we talked about today, the one that you made to your dad, *was Deb involved in that call in any way?*
A. *Absolutely not.*
Q. *Did Deb, to your knowledge, know that you were making -- that you were having that conversation?*
A. *Not at all.*
Q. *To your knowledge, did Deb know that you were recording the conversation that was being had the third time with your father?*

9

A. *No, she did not.*

Q. Okay. The call -- the second call, the one that was the three-way call with Deb and your mom -- at any point did your dad actually get on that phone or was his voice just being overheard in the background?

A. Yeah, *he was overheard. He wasn't on the phone.*

Q. Okay. At any point was any of that information recorded?

A. No.

Q. At any point did Ms. Nixon tell you to record anybody or anything?

A. *Ms. Nixon did not ever tell me to record anyone or anything, for the record.*

Q. Did anybody ever tell you to record anyone or anything?

A. *No one told me to record anyone or anything.*

(N.T., 6/17/16, pp.33-34). [emphasis added]

       *         .*         *

| BY MS. COELHO: | Q. Now, once you *merged your mother in*, these things Mr. Adams is asking you to speculate that you overheard -- you're overhearing that as commotion in the background and not as a direct communication with you. |
|---|---|
| MR. ADAMS: | Leading question, Your Honor. Objection. |
| THE COURT: | Sustained. |
| BY MS. COELHO: | Q. *I just want to be clear. When you merged your mother's call in, did your father get on the phone or was he yelling in the background?* |

A. He was in the background.

Q. *So he at no point in time was a party to that conversation.*

A. Yeah, I don't recall speaking to him. I really don't, not at the time.

Q. So the only time that you spoke directly to him for sure is the one that you actually recorded.

A. Once we left. Once I had my mother in the car.

Q. *And you had not merged anybody in that one?*

A. *Absolutely not.*

(N.T., 6/17/16, pp. 49-50). [emphasis added]

As Ms. Nixon was on the telephone with Ms. Siojo, pursuant to the Supreme Court's determination in <u>Commonwealth v. Spence</u>, *supra.*, the Act does not prohibit or otherwise limit the

10

interception of private communications using telephones. Moreover, as evidenced above, at no time did Ms. Nixon intentionally intercept, endeavor to intercept, or procure any other person to intercept or to endeavor to intercept any wire, electronic, or oral communication. 18 Pa.C.S.A. §5703(1). Ms. Siojo, using her cell phone, only merged her telephone call with her mother and ADA Nixon, there is no violation of the Wiretap Act applicable to Appellant. At no time was Appellant's telephone conversation intercepted.

Additionally, as testified to by Ms. Nixon, when Ms. Siojo put her on three-way calling, she only heard "chaos;" she could hear a man and a woman's voice, but not what was being said. (N.T., 6/17/16, pp.56-59, 61-63). She testified that she did not ask Ms. Siojo to record any conversations with Appellant, she did not ask her to gather information regarding the underlying case (ie., the assault on Eugene Kellam), nor was she a party to the later conversation between Appellant and his daughter that was recorded. (N.T., 6/17/16, pp.56-59). According to Ms. Nixon, she has a friendship with Ms. Siojo, who used to be her hairdresser, that is not related to her job; she was speaking to her as her friend, not as an assistant district attorney. (N.T., 6/17/16, p.52). Ms. Nixon testified that she was at work when Ms. Siojo called her and was unaware of any recordings until a prosecutor later told her. (N.T., 6/17/16, p.58).

> **BY MR. ADAMS:** Q. During what was characterized as the chaos conversation, the conversation that had a lot of chaos going on and that you were three-wayed into the conversation, you could hear Rashada's voice and a female's voice, correct?
> A. I could hear Rashada's voice most clearly. I could hear a female and I could hear a male.
> Q. Okay. Could you understand any of the words being said?
> A. No, and I wasn't trying to, to be honest with you.
> Q. How long did the three-way conversation go on that you were listening to?

11

A. I don't know. Long enough for me to get the police to her home. You have to understand I care about her. I was nervous too.

Q. So it was long enough for --

THE COURT: Can we just confine ourselves to the question, answer. Move forward, please.

MR. ADAMS: Fair enough, Your Honor.

BY MR. ADAMS: Q. It was long enough for you to go up the stairs and speak to the section chief, correct?

A. Correct.

Q. And during that time, you then put the conversation on speakerphone?

A. Correct.

Q. So the section chief and you are listening to the conversation, correct?

MS. COELHO: Objection to "conversation."

BY MR. ADAMS: Q. Or you could hear the chaos going on --

THE COURT: Overruled.
Did you hear the chaos?

THE WITNESS: Yes.

THE COURT: Everybody listening. Everybody screaming. Move on.

BY MR. ADAMS: Q. You could hear a male voice, a female voice, and Rashada's voice?

A. Correct.

Q. Is your testimony that you can't understand any of the words from the female?

THE COURT: That's what's she said already. Sustained. Move on, please.

MR. ADAMS: All right. I have no further questions.

(N.T., 6/17/16, pp. 61-63).

The "conversation" Ms. Nixon heard when she was brought in on by three-way calling, was a telephone call between Ms. Siojo and her mother, not Appellant. Moreover, she could not hear what was being said – only yelling and screaming by a man and a woman. This claim failed.

## B. Defective Bill of Information

Appellant next argued that he was denied his Sixth and Fourteenth Amendment rights and

12

Article I, Section 9 State Constitutional right as the trial court lacked subject matter jurisdiction based on fatally defective bills of information which failed to give formal and specific jurisdictional accusations; the bill of information lacked essential factual elements of misconduct on its face thereby rendering the bill of information insufficient to support a conviction of aggravated assault. This argument fails.

Appellant's challenge to the trial court's subject matter jurisdiction presented a question of law over which the Superior Court's standard of review is *de novo*. *See* Commonwealth v. Seiders, 11 A.3d 495, 496–97 (Pa. Super. 2010) ("Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary.") (citation omitted).

The Pennsylvania Supreme Court has held that subject matter jurisdiction requires both that the court be competent to hear the case and that the defendant be provided with a formal and specific accusation of the crimes charged. Commonwealth v. Hatchin, 709 A.2d 405, 408 (Pa. Super. 1998), *appeal denied*, 727 A.2d 128 (Pa. 1998) (citation and quotation marks omitted). To satisfy the constitutional requirements under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, a criminal information must give a defendant formal, specific notice of the charged crimes. Commonwealth v. Nischan, 928 A.2d 349, 356 (Pa. Super. 2007), *appeal denied*, 936 A.2d 40 (Pa. 2007) (citation omitted).

The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. This may be

13

accomplished through use of the words of the statute itself as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. Commonwealth v. Chambers, 852 A.2d 1197, 1199 (Pa. Super. 2004), *appeal denied*, 871 A.2d 188 (Pa. 2005) (citations and quotation marks omitted); *see also* Pa.R.Crim.P. 560(B).

Here, Appellant argues that this Court lacked subject matter jurisdiction over him because the criminal information was insufficient. Specifically, he argues that the information was insufficient because it "failed to give formal and specific accusation of jurisdictionally required essential factual elements of the misconduct to enable Appellant to prepare a defense and avoid double jeopardy, and further enable the trial court and this court to find facts on the face of the information sufficient to support a conviction for aggravate assault." (II, *pro se* 1925(b) Statement, dated August 13, 2017). Therefore, he claims he did not have notice of the nature and cause of the accusation against him.

Here, the Information charges that in the City and County of Philadelphia, Pennsylvania, Appellant:

> COUNT 1:    Aggravated Assault - (F1)
>
> Offense Date: 03/16/2014          18 [Pa.C.S.] § 2702 §§ A
>
> Attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; and/or attempted to cause, or intentionally, or knowingly did cause, bodily injury to another with a deadly weapon.
> Notice is hereby given that the Commonwealth intends to proceed under 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms).
>     Victim: Eugene Kellam
>
> *          *          *

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of

14

Pennsylvania.
(Information, 6/13/14).

Despite Appellant's argument to the contrary, the information was sufficient for him to address the charges and prepare a defense. The information was signed by the District Attorney, contained a proper caption, the date of the offense, the name of the victim, the county where the offense took place, a plain and concise statement of the essential elements of each offense, and a proper concluding statement. It also contained the citations for each of the statutes violated. (Information, 6/13/14). Through the criminal information, the Commonwealth provided Appellant with a formal and specific accusation of crimes charged. *See* Hatchin, *supra* at 408. The information fully set forth the elements of the offenses charged with sufficient detail. *See* Chambers, *supra* at 1199; *see also* Pa.R.Crim.P. 560(B). Therefore, Appellant's challenge to the Court's subject matter jurisdiction is meritless.

## C. Sentencing – Three Strikes

Appellant argues that he was deprived of his Sixth, Tenth, and Fourteenth Amendment rights and Contract Clause rights under both the United States and Pennsylvania Constitutions because he was not given notice of a possible "three strikes" sentence in the bill of information. Additionally, Appellant argues that 42 Pa.C.S.A. § 9714 is an illegal sentencing scheme under Apprendi-line of cases.

Appellant concludes that the Court should not have imposed a Section 9714(a) mandatory minimum sentence. Appellant's claim challenges the legality of his sentence. *See* Commonwealth v. Vasquez, 560 Pa. 381, 744 A.2d 1280 (2000) (stating application of mandatory sentencing provisions implicates legality of sentence). Issues relating to the legality of a sentence are questions of law.

15

Commonwealth v. Diamond, 945 A.2d 252, 256 (Pa.Super.2008), *appeal denied*, 598 Pa. 755, 955 A.2d 356 (2008). "The defendant or the Commonwealth may appeal as of right the legality of the sentence." 42 Pa.C.S.A. § 9781(a). *See also* Commonwealth v. Edrington, 780 A.2d 721 (Pa.Super.2001) (maintaining legality of sentence claims cannot be waived, where reviewing court has proper jurisdiction). When the legality of a sentence is at issue on appeal, our "standard of review over such questions is *de novo* and our scope of review is plenary." Diamond, *supra* at 256. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Commonwealth v. Pombo, 26 A.3d 1155, 1157 (Pa.Super.2011) *quoting* Commonwealth v. Bowers, 25 A.3d 349, 352 (Pa.Super.2011); *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012).

Section 9714 provides, in pertinent part:

§ 9714. Sentences for second and subsequent offenses

(a) Mandatory sentence.—
* * *
(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

* * *
(d) Proof at sentencing.—Provisions of this section shall not be an element of the crime and *notice* thereof to the defendant *shall not be required prior to conviction*, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided *after conviction* and *before sentencing*. The applicability of this section shall be determined at sentencing. The sentencing court,

16

prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section.

42 Pa.C.S.A. § 9714(a)(2 ), (d) (emphasis added). The term "crime of violence" includes robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery). 42 Pa.C.S.A. § 9714(g).

The plain language of section 9714(d) indicates that the sentencing court, by reviewing the defendant's criminal record at the time of sentencing, determines whether the defendant is subject to the (two or) three strikes provision of subsection (a)(2). Further, it becomes imperative that the facts relied upon by the sentencing court be accurate. Commonwealth v. Medley, 725 A.2d 1225, 1229 (Pa.Super.1999), *appeal denied,* 561 Pa. 672, 749 A.2d 468 (2000) *quoting* Commonwealth v. Kerstetter, 580 A.2d 1134, 1135 (Pa.Super.1990). However, a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials. Rather, the court may receive any relevant information for the purposes of determining the proper penalty.

Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded the entire panoply of criminal trial procedural rights. In fact, the due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. Medley, *supra* (internal citations and quotation marks omitted). *See also* Commonwealth v. Norris, 819 A.2d 568, 574 (Pa.Super.2003). (explaining Section 9714(d) requires court to have written records detailing prior convictions; Commonwealth's oral account of

17

defendant's prior convictions, without written records, was insufficient for purposes of Section 9714(d)). Commonwealth v. Smith, 866 A.2d 1138 (Pa.Super.2005), *appeal denied*, 583 Pa. 682, 877 A.2d 462 (2005) (holding certain documents, including Dauphin County court records, FBI rap sheet, and National Crime Information Center rap sheet, supported finding that defendant had prior convictions for violent crimes).

Appellant's initial argument that he was deprived of his constitutional rights because he was not given notice of a possible "three strikes" sentence in the bill of information fails as the statute clearly and unequivocally states that failure to provide notice shall not render the offender ineligible to be sentenced under paragraph (2). *See* 42 Pa.C.S. § 9714 (a). Moreover, as required by statute, the Commonwealth provided notice of their intent to seek a mandatory sentence under section 9714 in their February 10, 2017 Sentencing Memorandum to Appellant and this Court, prior to sentencing on March 2, 2017.

Finally, Appellant contends that the mandatory life sentence imposed on him is illegal in light of Apprendi [v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63, 147 L. Ed. 2d 435 (2000)] line of cases. This argument also fails as Apprendi and its progeny, all exclude prior convictions from what is required to be submitted to the jury when seeking to increase a sentence.

In Apprendi, *supra.*, the United States Supreme Court, held that "**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. [emphasis added] With that exception, the Court endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally

18

clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S., at 252-253, 119 S.Ct. 1215 (opinion of STEVENS, J.); *see also id.,* at 253, 119 S.Ct. 1215 (opinion of SCALIA, J.). Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63, 147 L. Ed. 2d 435 (2000).

The Appellate Courts have continuously held that prior convictions are not facts that need to be submitted to a jury and proven beyond reasonable doubt in sentencing. *See* Alleyne v. United States, 133 S.Ct. 2151, 2160 n.1 (2013). *See also,* Commonwealth v. Reid, 117 A.3d 777 (Pa. Super. 2015). In Alleyne, the Supreme Court of the United States held that the Sixth Amendment requires that any fact—*other than a prior conviction*—that increases a mandatory minimum sentence for an offense must be submitted to the jury and proven beyond a reasonable doubt. Importantly, Alleyne did not overturn prior precedent that prior convictions are sentencing factors and not elements of offenses. Alleyne, 133 S.Ct. at 2160 n. 1; *see also* Alemendarez–Torres v. United States, 523 U.S. 224, 243–44, 118 S.Ct. 1219, 1230–31, 140 L.Ed.2d 350 (1998). Additionally, the Superior Court has recognized that Alleyne does not invalidate mandatory minimum sentencing statutes that pertain to a defendant's prior convictions. *See* Commonwealth v. Watley, 81 A.3d 108, 117 (Pa. Super. 2013). Section 9714 increases mandatory minimum sentences based on prior convictions. *See* 42 Pa.C.S. § 9714(a)(1). Accordingly, this section is not unconstitutional under Alleyne. *See* Alleyne, *supra; see also* Commonwealth v. Akbar, 91 A.3d 227, 239 n. 9 (Pa. Super. 2014), *appeal granted and order vacated on other grounds,* —— Pa. ——, 111 A.3d 168 (2015).

In sum, Appellant's arguments failed to demonstrate that he is serving an illegal sentence.

## IV.  CONCLUSION

In summary, this Court has carefully reviewed the entire record and found no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief in this case.  For the reasons set forth above, Appellant's judgment of sentence should be affirmed.

BY THE COURT:

ANNE MARIE B. COYLE,   J.

20