J-S82007-16

2017 PA Super 45

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALEXANDER TORRES-KUILAN | |
| Appellant | No. 698 MDA 2016 |

Appeal from the Judgment of Sentence January 20, 2016
In the Court of Common Pleas of Union County
Criminal Division at No(s): CP-60-CR-0000197-2014

BEFORE:  OTT, J., DUBOW, J., and PLATT, J.[*]

OPINION BY OTT, J.:                    **FILED FEBRUARY 27, 2017**

Alexander Torres-Kuilan appeals from the judgment of sentence imposed on January 20, 2016, in the Court of Common Pleas of Union County following his conviction by jury on charges of aggravated indecent assault without consent, aggravated indecent assault complainant less than 13 years old, indecent assault of a person less than 13 years old, and indecent assault without consent.[1]  Torres-Kuilan received an aggregate sentence of four to ten years' incarceration followed by five years of probation.  In this timely appeal, Torres-Kuilan raises two issues.  He claims

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(a)(1), 3125(a)(7), 3126(a)(7) and 3126(a)(1), respectively.

the trial court erred in: (1) conducting a portion of the Section 5985[2] hearing, to determine whether the child victim shall be allowed to testify closed circuit television, outside of his presence, and (2) allowing the child to testify via closed circuit video based upon improperly admitted evidence. Following a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

Torres-Kuilan was accused of molesting a four-year-old child, Torres-Kuilan's niece. The victim was seven years old at the time of trial. Because of her age and circumstances of the crime, there were questions regarding her competency to testify and her ability to testify in open court. The Commonwealth filed a motion *in limine* seeking to allow the victim to testify via closed circuit television. The trial court deferred ruling on the motion until the time of trial. On the first day of trial, March 25, 2015, the child was called to testify. She was accompanied by Vicki Hackenburg.[3] The child began crying and refused to enter the courtroom. Pursuant to 42 Pa.C.S. § 5985 and the Commonwealth's motion, an in *camera* hearing was held to determine if the child would be allowed to testify other than in open court.

_____

[2] 42 Pa.C.S. § 5985, regarding testimony by contemporaneous alternative method.

[3] It is unclear if Hackenburg was employed by the trial court or the District Attorney's office. Her responsibility relevant to this trial appears to have been to keep the child company until she testified. Torres-Kuilan's brief refers to Hackenburg as a "witness coordinator."

The trial court heard testimony from both the child and Hackenburg. Torres-Kuilan was not present for either.

In his first issue, Torres-Kuilan argues he was improperly kept from being present during Hackenburg's testimony. He maintains that although pursuant to 42 Pa.C.S. § 5985 (a.2)(1) he was not allowed to be present during the child victim's testimony, pursuant to § 5985 (a.2)(2), he was allowed to be present during Hackenburg's testimony. While the statute did give him the right to be present during Hackenburg's testimony, no relevant objection was raised at that time. Because the issue was not preserved with a timely objection, it has been waived. *See Commonwealth v. Spell*, 28 A.3d 1274, 1280 (Pa. 2011) (failure to raise a timely objection waives issue), and Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

In Torres-Kuilan's second issue, he claims the child victim should not have been allowed to testify via closed circuit television in that the trial court improperly relied upon Hackenburg's testimony in making that ruling. This argument is based upon Torres-Kuilan's statutory interpretation of 42 Pa.C.S. § 5985, which states in relevant part:

> **(a.1) Determination.--** Before the court orders the child victim or the child material witness to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would

substantially impair the child victim's or child material witness's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child victim or child material witness, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting.

42 Pa.C.S. § 5985(a.1)(2).

Our standard of review for questions of statutory interpretation is well-settled:

Statutory interpretation is a question of law, therefore our standard of review is *de novo,* and our scope of review is plenary. *Commonwealth v. Hall*, 622 Pa. 396, 80 A.3d 1204, 1211 (2013). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Commonwealth v. McCoy*, 599 Pa. 599, 962 A.2d 1160, 1166 (2009) (citation omitted).

Generally, a statute's plain language provides the best indication of legislative intent. *Id.* We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. *Hall*, 80 A.3d at 1211.

*Commonwealth v. Popielarcheck*, ___ A.3d ___, 2016 WL 7103930 at *2 (Pa. Super. 2015).

Torres-Kuilan argues that Hackenburg was neither a parent or custodian of the child. Therefore, the trial court could properly consider her

testimony only if she qualified as "any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting." Specifically, Torres-Kuilan claims:

> The statute does indeed permit testimony from "any other person." But 42 Pa.C.S.A. Section 5985, as noted, suggests that such other person should have dealt with the child in a medical or therapeutic setting. Here, the Witness Coordinator had no such dealings.
>
> If the language "such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting" is ignored in analyzing 42 Pa.C.S.A. Section 5985(a.1)(2) and courts instead dwell simply on the "any other person" phrase, the result is preposterous. Courts could then consider testimony from literally anyone who had the briefest contact with an alleged child victim or witness in support of this crucial determination. The suggestion is unconstitutional and impermissible.

Torres-Kuilan's Brief at 10.

We disagree with Torres-Kuilan's restrictive interpretation of Section 5985(a.1)(2). There are few cases interpreting this statute. *Commonwealth v. Charlton*, 902 A.2d 554 (Pa. Super. 2006) is the only case we have found that discusses subsection (a.1)(1) and (2). In *Charlton*, a psychotherapist testified the victim suffered from depression, suicidal thoughts and post-traumatic stress, all of which would impact her ability to testify effectively. *Id*. at 559. At issue in *Charlton* was the level of trauma the victim would suffer. However, we believe *Charlton* and Section 5985 provide equal importance to the need to make sure the child

has the reasonable ability to communicate with the jury. To this end, Hackenburg testified, in relevant part:

> A: When I got to the District Attorney's office, she was watching a movie; and I explained that it was time to come in to testify. She got quiet and she looked down. Her father talked to her. I don't know what he said. It was in Spanish.
>
> She came with me; and as soon as she got out of the door, she started getting upset and crying. Her father came out, walked her to the double doors there before you get into the hallway outside of the courtroom; and then I walked her the rest of the way, and she progressively got tenser. I could feel her – because I was kind of hugging her, I could feel her like tense up.
>
> The Court: So you had your arm around her?
>
> A: Yes, and I could feel her tense up. By the time we got to the door, I tried to explain to her what would happen; and she just kind of looked down, wouldn't reply to me either way. And when I opened the door, I had to push her to even – she was planted. I couldn't even get her to move. At that point I felt between the tears and her being so planted that I needed to come in and explain that I felt that she couldn't come in without me physically forcing her inside.

N.T. Trial, 3/25/2015 at 43.

Here, Hackenburg simply related how the child broke down emotionally and refused to enter the courtroom. Her testimony served to confirm the trial judge's own observations of the child. Importantly, pursuant to Section 5985 (a.1)(1), the trial judge's observations alone can be sufficient to make the ultimate determination of whether the child will be allowed to testify via alternative method.

The trial court had already had the opportunity to observe the child, her demeanor and assess her state of mind. Subsequent to her

testimony, the trial judge revealed that testimony supplemented his own observations.

> **The Court did have the opportunity to observe Ms. Hackenburg attempt to bring the child into the courtroom. The back doors in the courtroom have windows in them permitting the Court to see out into the lobby area, and the child stopped short of the doors and wouldn't move. So Ms. Hackenburg's testimony that the child would not even come into the courtroom is not only credible just accepting the word of Ms. Hackenburg, but it is also consistent with the Court's own observations.** If the child isn't going to move into the courtroom, it's kind of difficult to get her to say anything, especially considering that – was she crying?
>
> Hackenburg: Yes, Your Honor.
>
> The Court: Okay. So the Court has had an opportunity to observe [the child] before at prior proceedings where she's extremely quiet and bashful and does take her a little time to warm up.
>
> Based on all of that, I think that – and considering her responses that the size of the courtroom and the fact that the Defendant's presence would make it scary for her, and given her physical reactions to everything, the Court finds that being in the presence of the fact finder and the Defendant or either one of them would result in [the child] suffering serious emotional distress and that would substantially impair her ability to reasonably communicate as observed by the Court.

*Id*. at 46-47.

The trial judge aptly realized there is no point to presenting a witness who cannot communicate with the jury, and if the witness cannot even enter the courtroom that witness cannot communicate with the jury. Accordingly, based upon his own observations of the child victim and her inability to enter

the courtroom, she would not be able to communicate with the jury unless she was able to testify via closed circuit television.

Torres-Kuilan has argued that if persons such as Hackenburg are allowed to testify, then virtually anyone with the briefest contact can give evidence in such a matter. We do not believe that Section 5985 should be read to limit the trial judge's ability to hear relevant evidence which aids in the determination whether the child witness should be allowed to testify via alternative method.[4] This is true especially where the statute itself does not contain such limiting language. Accordingly, we find Torres-Kuilan's concerns to be misplaced and find no error in allowing Hackenburg to testify.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2017

---

[4] Evidence is relevant "if it has the tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." *See* Pa.R.E. 401(a),(b). Under this standard definition of relevant evidence, Hackenburg's testimony was clearly relevant.