2018 PA Super 5

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JONATHAN ROBERT TYRRELL | |
| Appellant | No. 2011 MDA 2016 |

Appeal from the Judgment of Sentence Entered October 4, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0005166-2014

BEFORE:  STABILE, PLATT,[*] and STRASSBURGER,[*] JJ.

OPINION BY STABILE, J.: **FILED JANUARY 17, 2018**

Appellant, Jonathan Robert Tyrrell, appeals from the October 4, 2016 judgment of sentence imposing an aggregate 50 to 100 years of incarceration followed by ten years of probation for rape of a child, rape of a child resulting in serious bodily injury, indecent assault, unlawful contact with a minor, and corruption of minors.[1]  The victim ["S.B."] was Appellant's then eight-year-old daughter.  We affirm.

The offenses occurred on April 2, 2014.  Police arrested Appellant on August 26, 2014 after he gave a statement.  Appellant filed a pre-trial motion to suppress his statement, but the trial court denied Appellant's motion at the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c) and (d), 3126, 6138, and 6301, respectively.

conclusion of a May 6, 2016 hearing. After another pre-trial hearing, on May 23, 2016, the trial court granted the Commonwealth's request to present S.B.'s testimony via closed-circuit television. The trial court also ruled that S.B.'s testimony was not tainted under the standards of ***Commonwealth v. Delbridge***, 855 A.2d 27 (Pa. 2003) ("***Delbridge I***"), and ***Commonwealth v. Delbridge***, 859 A.2d 1254 (Pa. 2004) ("***Delbridge II***"). A jury trial commenced on July 6, 2016. At the conclusion of trial, the jury found Appellant guilty of the aforementioned offenses.

In this timely appeal, Appellant presents three issues for our review:

> I.    Did not the court err in failing to suppress statements that the police obtained from [Appellant] when the statements were not the product of a free, intelligent, knowing, voluntary, informed and explicit waiver by [Appellant] of his privilege against self-incrimination and right to counsel with prior interrogation?
>
> II.    Did not the court err in entering an order under 42 Pa.C.S.A. § 5985 that the trial testimony of the minor complainant be taken under oath or affirmation in a room other than a courtroom and transmitted by a contemporaneous alternative method?
>
> III.    Did not the court err in finding that the minor complainant was competent to testify when [Appellant] proved by clear and convincing evidence that she had a 'tainted' recollection under the standards adopted by the Pennsylvania Supreme Court in [***Delbridge I*** and ***Delbridge II***]?

Appellant's Brief at 7.

Appellant first argues that the trial court erred in denying his motion to suppress his statement to police. We review that argument as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to

determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017).

Appellant argues that he did not give a knowing, intelligent, and voluntary waiver of his *Miranda*[2] rights. At the suppression hearing, Appellant testified that he was alone with police officer John Cassidy O'Connor for a minute or a minute and a half prior to the beginning of his recorded statement. N.T. Hearing, 5/6/16, at 56. Appellant testified that, during that time, O'Connor threatened to arrest his wife if he declined to give a statement. *Id.* at 57-58. Appellant claimed his will was overborne and he agreed to give a statement out of concern for the wellbeing of his wife. *Id.* at 58-59. O'Connor denied making any such threat. *Id.* at 63-64.

The trial court addressed this issue as follows:

[T]he recorded interview lasted for over two hours after the alleged threat with Appellant initially denying and then slowly

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

revealing information. In fact, his final statement was not even a confession to rape, it was an admission that there was an accident and [S.B.] was injured. As such, we found that his testimony that he felt threatened by Det. O'Connor to lack credibility. The portions of the interview we viewed at the hearing show a calm interview and Det. O'Connor indicated that his tone remained the same throughout. It is hard to fathom that someone who was so worked up about his wife after such a threat would take more than two hours to finally admit that perhaps an accident occurred that harmed his daughter.

Trial Court Opinion, 2/17/17, at 7-8.

Thus, Appellant's assertion of an involuntary statement rests largely on a credibility determination and not on a conclusion of law. The record supports the trial court's finding that no threat occurred. First, O'Connor denied it, and the trial court was entitled to believe him. Further, the record supports the trial court's finding that the course of the two-hour interview—including Appellant's early denial of any wrongdoing—is inconsistent with Appellant's claim that he agreed to speak in order to protect his wife. In summary, the record supports the finding that O'Connor did not procure Appellant's statement with a threat. Appellant offers nothing else to support a conclusion that his statement was involuntary. Appellant's first argument lacks merit.

Next, Appellant argues the trial court erred in granting the Commonwealth's motion to present S.B.'s testimony via closed circuit television. Section 5985 of the Judicial Code governs testimony by a contemporaneous alternative method:

**(a) Contemporaneous alternative method.--**Subject to subsection (a.1), in any prosecution or adjudication involving a child victim or a child material witness, the court may order that

- 4 -

the testimony of the child victim or child material witness be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim or child material witness, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim or child material witness but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child victim or child material witness shall proceed in the same manner as normally permitted.

**(a.1) Determination.--**Before the court orders the child victim or the child material witness to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate. In making this determination, the court may do all of the following:

> (1) Observe and question the child victim or child material witness, either inside or outside the courtroom.

> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985(a), (a.1).

In **Commonwealth v Charlton**, 906 A.2d 554, 559 (Pa. Super. 2006), **appeal denied**, 911 A.2d 933 (Pa. 2006), the Commonwealth presented the expert testimony of the child victim's treating psychotherapist. The

psychotherapist testified that the victim suffered "depression, suicidal thoughts, and post-traumatic stress disorder which likely would impact her ability to testify effectively. *Id.* Likewise, the psychotherapist testified that the defendant's presence in the courtroom would send the victim "into an emotional tailspin." *Id.* Given this testimony, we found no error in the trial court's decision to permit the victim to testify via closed circuit television. *Id.*

Similarly, in *Commonwealth v. Torres-Kuilan*, 156 A.3d 1229, 1230 (Pa. Super. 2017), the victim, seven years old at the time of trial, broke down and cried and refused to enter the courtroom to testify. The trial court conducted an *in camera* hearing to determine whether to permit the child to testify via closed circuit television. The court heard testimony from the victim and a woman who had been keeping the victim company that morning and ultimately decided to permit the victim to testify remotely. *Id.* We affirmed, reasoning that the trial court's observations are a sufficient basis for permitting remote testimony under § 5985(a.1)(1).

Instantly, the trial court heard the expert testimony of Mindy Bell, a "licensed professional counselor." N.T. Hearing, 5/23/16, at 6. Bell testified that she believed it would be "traumatic" for S.B. to testify in open court in front of her father and others. *Id.* at 33. Asked why she believed that, Bell responded:

> Because of how hard it was for her to disclose to me; because as with any child, they still feel a certain loyalty to their parent. So I think it would be very difficult for her to be in the

same room with her father and a bunch of witnesses and say what happened.

*Id.*

Tricia Deatrick, a caseworker for Dauphin County Children and Youth Services, testified as a fact witness. Deatrick said that S.B. suffered because her allegations against Appellant broke her family up. *Id.* at 62. As of the time of trial, S.B. and her siblings were in foster care. *Id.* Also,

> [S.B.] has struggled a great deal with anxiety and depression and PTSD. And this has all just amplified her symptoms. She's really struggling. She feels a lot of—a lot of different feelings, but she still really loves both of her parents and she's really struggled with that, the love that she has for them and then what happened to her as well as, you know, the not [sic] belief that she has from her family.
>
> On top of it, she has not seen [Appellant] in over a year and a half, and that's a huge deal for her. And for her to—she's talked about for this day, date that she has to tell her story to be the day that she has to see him for the first time in a year and a half, how scarey [sic] that is for her.
>
> And I just don't think she's ready to stand in a courtroom facing him and be able to tell her story. I think she's really just not in a place for that yet.

*Id.* at 62-63.

Few published decisions address § 5985, and those that do have not announced a standard for reviewing the trial court's decision. In ***Torres-Kuilan***, this Court employed the principles of statutory construction to determine whether the Commonwealth's proffer complied with § 5985's terms. ***Torres-Kuilan***, 156 A.3d at 1231-32. The Court observed: "a statute's plain language provides the best indication of legislative intent. We

will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to 'a result that is absurd, impossible of execution or unreasonable.'" *Id.* at 1231 (quoting 1 Pa.C.S.A. § 1922(1)).

Based on the hearing testimony discussed above, we conclude that the Commonwealth's proffer complied with the plain language of § 5985(a.1)(2), which permits a witness to testify via closed circuit television based on the testimony of "any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting." 42 Pa.C.S.A. § 5985(a.1)(2). Appellant argues for a contrary result because S.B. did not testify, S.B.'s current counselor did not testify, Bell had not seen S.B. for approximately nine months prior to the trial, S.B.'s foster parents did not testify, Bell's expert opinion did not conform to § 5985(a.1), and Deatrick was not qualified as an expert. In each case, Appellant seeks to impose a requirement that does not appear in the statute. Section 5985 does not require testimony from the proposed witness or the witness' current counselor. Nor does it require testimony from a parent/foster parent or an expert witness. Appellant did not object when Deatrick opined that Appellant was not ready to appear in court and testify in the presence of her father. N.T. Hearing, 5/23/16, at 63.

Concerning Appellant's argument that Bell's testimony failed to conform to the standard of § 5985(a.1), Appellant notes that the Commonwealth in

*Charlton* presented the victim's current counselor; that the counselor in *Charlton* gave testimony that closely tracked the language of § 5985; that the trial judge in *Torres-Kuilan* personally observed the victim break down as she was entering the courtroom; and that the trial judge in *Torres-Kuilan* conducted an *in camera* hearing. Appellant's Brief at 31-33. We find Appellant's argument unavailing, as the distinct facts of published cases do not add to or alter the applicable statutory language. The testimony of Bell and Deatrick clearly supports a finding that Appellant's presence would have caused serious emotional distress and impaired her ability to communicate. We do not believe § 5985 requires a testifying witness to use any specific phrasing. Further, nothing in the statute requires the trial judge to observe the victim, in an *in camera* hearing or otherwise. We discern no error in the trial court's decision to permit S.B. to testify via closed circuit television.

Finally, Appellant argues that S.B. was not competent to testify because coercive interrogation techniques tainted her recollection. Our Supreme Court addressed this issue in *Delbridge I* and *II*. Our Supreme Court has held that "[c]ompetency is the rule and incompetency the exception." *Rosche v. McCoy*, 156 A.2d 307, 309 (Pa. 1959). To be deemed competent, a child witness must demonstrate:

> 1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Id.* at 310 (emphasis in original). The *Rosche* Court noted, "children are peculiarly susceptible to the world of make-believe and of suggestions." *Id. Delbridge I* described taint as "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques[.]" *Delbridge I*, 855 A.2d at 30. As such, it relates to the second prong of the *Rosche* test, the child's mental capacity to observe, recall, and testify about the occurrence. *Id.* at 40.

The Supreme Court permitted pretrial examination of possible witness taint "where there is some evidence of improper interview techniques, suggestive questioning, vilification of the accused and interview bias may have influenced a child witness to such a degree that the proffered testimony may be irreparably compromised." *Id.* at 39. Taint is distinct from credibility. *Id.* at 40. Taint bears on a witness's competence, and it is the proper subject of a pre-trial competency hearing. *Id.* Credibility is a matter for the finder of fact. *Id.* The party asserting incompetence bears the "burden of production of evidence to show taint and persuasion to show taint by clear and convincing evidence. *Id.* at 40. "The clear and convincing burden accepts that some suggestibility may occur in the gathering of evidence, while recognizing that when considering the totality of the circumstances, any possible taint is sufficiently attenuated to permit a finding of competency." *Id.* at 41. We review the trial court's competency finding for abuse of discretion. *Id.* at 41.

Post-remand, the Supreme Court in **_Delbridge II_** upheld the trial court's finding that the defendant failed to demonstrate the presence of taint. **_Delbridge II_**, 859 A.2d at 1258. The defendant "failed to elicit any testimony […] supporting the allegations that [the victims] had been subjected to repetitive, suggestive, or coercive interview techniques, to interviewer bias, or to inappropriate influence from their mother." **_Id._**

Instantly, Appellant notes that S.B. did not disclose Appellant's sexual abuse in forensic interviews that occurred on April 7, 2014 and February 12, 2015. S.B.'s first disclosure of sexual abuse came in a journal entry she provided to Bell on March 23, 2015 after Bell encouraged S.B. to keep a journal and describe memories and feelings. Thus, S.B.'s first disclosure of abuse occurred more than eleven months after the date of the alleged assault. Likewise, S.B. disclosed Appellant's sexual abuse to Deatrick when Deatrick visited her in her foster home on June 22, 2015. Finally, in an April 28, 2016 forensic interview, S.B. disclosed Appellant's sexual abuse to law enforcement authorities after a thirteen-minute break in the interview, during which she spoke to Deatrick, among others.

Bell and Deatrick were the only two witnesses to testify at the competency hearing. Bell testified that, when she began her sessions with S.B., she was aware of the allegations of S.B.'s sexual abuse. N.T. Hearing, 5/23/16, at 27. Bell conducted two or three rapport building sessions and then encouraged S.B. to start "journaling and talking with her foster mom

about trauma or anything that had happened to her." *Id.* at 28. Bell did not ask for S.B. and her foster mother to work on the journaling together. *Id.* at 29. Rather, "[t]he journaling was really [S.B.'s]. I just wanted her foster mom to be support in case she came—you know, had some negative emotions from anything she was journaling about." *Id.* at 29. Bell testified that she did not give S.B. specific instructions on how to journal: "I basically just told her to journal. Now, once she disclosed, I told her to journal if she could remember more things and how she felt. That would have been the only direction I gave her with respect to journal entries." *Id.* at 45. Bell testified that she did not use leading questions in her sessions with S.B.. *Id.* at 31. As noted above, S.B. disclosed Appellant's sexual assault to Bell via journal. *Id.*

> Deatrick described her first meeting with S.B. this way:
>
> When I introduced myself to [S.B.], she asked me if I knew why she was in foster care. And I explained that I knew what was in the record. And she asked me, you know—or I asked her if she wanted to tell me anything. I said, 'I know what's in the record.' I said, 'Don't know if that's all of the truth or, you know, if there's anything more you want to tell me, but if you'd like to tell me something, I'll listen; and if you don't, that's okay.'
>
> At first [S.B.] did talk a little bit and then said she wanted to stop talking, so she stopped and she left the room. And then I spoke with her two siblings. And during my conversation with her sister […], [S.B.] came back in and she wanted to tell me the truth.

*Id.* at 56.

We discern no abuse of discretion in the trial court's finding that no taint existed. Here, as in **Delbridge II**, Appellant produced no evidence that S.B. was subjected to "repetitive, suggestive, or coercive interview techniques, to interviewer bias, or to inappropriate influence" from any party. **Delbridge II**, 859 A.2d at 1258. The record reflects only that Bell encouraged S.B. to journal, and that Deatrick asked S.B. if she wanted to tell her anything. Appellant produced no evidence that S.B.'s foster mother or anyone else close to S.B. exerted any improper influence. In short, there is no evidence that S.B.'s testimony was compromised in any way. We agree with the trial court that Appellant failed to carry his burden of proving taint by clear and convincing evidence.

In summary, we conclude that each of Appellant's arguments lacks merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/17/2018