J-S53028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT |
|---|---|
| Appellee | OF PENNSYLVANIA |
| v. | |
| SAMUEL COAXUM | |
| Appellant | No. 3240 EDA 2018 |

Appeal from the Judgment of Sentence Entered December 2, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014278-2014

BEFORE: OLSON, STABILE, and NICHOLS, JJ.

MEMORANDUM BY STABILE, J.: **FILED JANUARY 21, 2020**

Appellant, Samuel Coaxum, appeals *nunc pro tunc* from the December 2, 2016 judgment of sentence imposing an aggregate 160 to 320 months in prison for aggravated assault, burglary, and criminal trespass.[1] We affirm.

The record reflects that Appellant lived for a time with his paramour, Shirlene Myatt ("Shirlene"), in a house she owned, but was no longer living with her as of the late summer or early fall of 2014. N.T. Trial, 7/22/15, a.m. at 36. On September 3, 2014, Shirlene obtained a protection from abuse ("PFA") order protecting her from Appellant. *Id.* at 40, Exhibit C-3. Prior to that, in October of 2013, in response to Shirlene's emergency petition for relief from abuse, the trial court ordered Appellant evicted from Shirlene's home.

_____

[1] 18 Pa.C.S.A. §§ 2702, 3502, and 3503, respectively.

*Id.* at 39, Exhibit C-2. Nonetheless, Appellant vandalized Shirlene's home on November 30, 2014. *Id.* at 10-14. Shortly thereafter, Shirlene exchanged homes with her son, Eugene Myatt ("Eugene").[2] *Id.* at 9, 20, 29-31, 56-57. Eugene changed the mechanical lock on Shirlene's front door and changed the code on the code lock. *Id.* at 19. On December 4, 2014, Eugene arrived at Shirlene's home with his seven-year-old son, M.M., to find the new mechanical lock broken. *Id.* at 22-23. Later, Eugene discovered a damaged rear window that no longer closed. *Id.* at 35. Upon entering the home, Eugene found Appellant on the couch. *Id.* at 23. Appellant did not have permission to be there. *Id.* at 31-32. After Eugene demanded that Appellant leave, Appellant reached under the carpet and retrieved a knife from under the carpet and "came at" Eugene and M.M. brandishing the knife. *Id.* at 23-26, 49, 58. The knife was one of Shirlene's kitchen knives, and it was 14 inches long with a blue handle and an 8-inch blade. *Id.* at 73, 87-88. Eugene stood in front of M.M., took M.M.'s baseball bat (Eugene and M.M. had been playing baseball just prior to the incident), and raised it in the direction of Appellant. *Id.* at 20-21, 45. Appellant was approximately three feet from Eugene during the incident. Appellant did not "lunge," but he told Eugene he wanted to stab and slice him up. *Id.* at 23-24, 26, 50-51, 79. Appellant then removed his cell

_____

[2] Eugene was on probation for theft by deception at the time. *Id.* at 42. At trial, the defense presented Eugene's probation officer, who testified that Eugene informed him only that he had been at his mother's house on and off, not that he exchanged homes with his mother. *Id.* at 92.

- 2 -

phone from his pocket, called police, and told them a man was in his house brandishing a bat. *Id.* at 24.

When police arrived, Eugene was on the front porch holding a baseball bat and arguing with Appellant, who was still inside. *Id.* at 82. Police directed Eugene to drop the bat, which he did. *Id.* at 82-83. Eugene then produced copies of the PFA and eviction orders, and police verified the existence of a protective order via the National Crime Information Center ("NCIC"). *Id.* at 24-25, 28-29, 84-85. M.M. directed police to the knife Appellant brandished. *Id.* at 75, 86-87.

Testifying in his own defense, Appellant said that the house was his, and that he got in by entering the code into the code lock. N.T. Trial, 7/22/15, p.m., at 3-5. He said he did not brandish the knife and had never seen it before. *Id.* at 11. Appellant produced an electric bill addressed to him at Shrilene's house covering the service period from July through December of 2014. *Id.* at 18-20, Exhibit D-5. He also said a third party, not Shirlene, owned the house, and that Shirlene caused the damage that occurred on November 30, 2014. *Id.* at 23-24. Appellant denied that the mechanical deadbolt locks were ever changed, and he claimed he left the deadbolt unlocked earlier that day. *Id.* at 26. Appellant acknowledged making several threatening phone calls to Shirlene telling her not to testify at the trial in this matter. *Id.* at 40, Exhibit C-5. He claimed he did not want her to support Eugene, her son, in his lies. *Id.*

On July 31, 2015, the trial court, sitting as fact finder, found Appellant guilty of the aforementioned offenses. The court imposed sentence on December 2, 2016.[3] On April 25, 2017, Appellant filed a counseled first petition pursuant to the Post Conviction Relief Act ("PCRA") seeking reinstatement of his right to file a direct appeal.[4] On November 2, 2018, the PCRA court granted relief. Appellant filed this timely *nunc pro tunc* appeal four days later. He claims the record contains insufficient evidence to support each of his three convictions, and that the trial court erred in finding M.M. competent to testify. We will address these arguments in turn.

With regard to the sufficiency of the evidence arguments, our standard of review is *de novo* and the scope of our review "is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rusing***, 99 A.3d 416, 420-21 (Pa. 2014). The trial court, sitting as fact finder, "can believe all or a part of or none of a defendant's statements, confessions, or testimony, or the testimony of any witness." ***In re J.B.***, 189 A.3d 390, 408 (Pa. 2018). We regard this deferential manner of appellate review as according appropriate respect to the role of the jury or a

_____

[3] The sentencing hearing was continued several times, due in part to Appellant's post-verdict motion for extraordinary relief.

[4] The docket reflects that the trial court permitted Appellant's trial counsel to withdraw after sentencing, and appointed the public defender's office to handle Appellant's appeal. The public defender did not file a timely appeal.

trial judge sitting without a jury to make credibility determinations and factual findings based on their weighing of the evidence which they hear firsthand." *Id.* at 408–09.

The trial court found Appellant guilty of aggravated assault as defined in 18 Pa.C.S.A. § 2702(a)(4), which applies where the defendant attempts to cause bodily injury with a deadly weapon. 18 Pa.C.S.A. § 2702(a)(4). Appellant does not dispute that the 8-inch blade he brandished is a deadly weapon. He claims, however, he did not attempt to cause bodily injury. The record, as set forth above, reflects that Appellant "came at" Eugene brandishing the knife, stopping three feet away from Eugene as Eugene brandished a baseball bat in response. Appellant claims those facts are not sufficient evidence of an attempt to cause bodily injury, but he cites no law in support of this argument.

The governing case law provides as follows:

> For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result. Accordingly, we recognize that "[i]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Matthews*, 870 A.2d 924, 929 (Pa. Super. 2005) (internal citations and quotation marks omitted), *affirmed*, 909 A.2d 1254 (Pa. 2006). "The conduct giving rise to an inference that defendant intended

- 5 -

to inflict serious bodily injury need not in itself be life-threatening." ***Commonwealth v. Elrod***, 572 A.2d 1229,1231 (Pa. Super. 1990), ***appeal denied***, 592 A.2d 1227 (Pa. 1990). A "crucial factor" in examining the defendant's intent is "whether he was stopped short of the objective signaled by his words or conduct." ***Id.*** at 1232. In ***Elrod***, this Court held the evidence of an attempt was sufficient where the defendant brandished a knife, threatened to stab the victim, ran the knife along her body before a passerby restrained him. ***Id.*** at 1231. Likewise, in ***Commonwealth v. Smith***, 626 A.2d 614, 620 (Pa. Super. 1993), the defendant pointed an unloaded gun at the victim's head, grabbed her by the hair, and pushed her to the floor. The assault ended when a third party intervened. ***Id.*** We concluded this was sufficient evidence of an attempt to cause bodily injury under § 2702(a)(4). ***Id.***

In both ***Elrod*** and ***Smith*** the defendants issued threats and brandished a weapon, but were thwarted before they injured the victim. The same is true here, as Appellant brandished an 8-inch blade and threatened to stab and slice Eugene before Eugene brandished a baseball bat in defense. In other words, Appellant "was stopped short of the objective signaled by his words or conduct." ***Elrod***, 572 A.2d at 1232. Appellant, as noted, does not address any pertinent case law, and he does not attempt to distinguish ***Elrod*** or ***Smith***. Based on all of the foregoing, we conclude that Appellant has failed to establish a meritorious challenge to his aggravated assault conviction.

Next, Appellant argues his burglary conviction cannot stand because the record contains no evidence that he entered Shirlene's home with intent to commit a crime therein. A burglary occurs where the offender, with intent to commit a crime therein, enters a building or occupied structure adapted for overnight accommodations in which no person is present at the time of the offense. 18 Pa.C.S.A. § 3502(a)(2). "The specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." **Commonwealth v. Eck**, 654 A.2d 1104, 1108–09 (Pa. Super. 1995).

The evidence, viewed in a light most favorable to the Commonwealth, establishes that Shirlene obtained a PFA order against Appellant, and that he subsequently vandalized her house. Several days later, Appellant returned, disabled the mechanical lock on the front door, broke a window, entered the house, retrieved a large knife from the kitchen, and lay in wait on the couch. These facts support a reasonable inference that Appellant entered Shirlene's house with intent to commit a crime therein.

Appellant also argues that he was privileged to enter in accord with 18 Pa.C.S.A. § 3502(b)(3) (defining privilege to enter as a defense to burglary). He argues as follows: "[T]he Commonwealth offered no testimony to dispute Appellant's contention that he, being privileged to enter the home, typed a code into another lock on the front door and gained entry into the home in

this manner." Appellant's Brief at 11. The record does not support this assertion. Eugene testified that he changed the mechanical lock and found it broken; that he changed the code; and that he found a damaged window in the rear of the home. The trial court was entitled to believe Eugene and disbelieve Appellant's contention that he was privileged to enter the home and did so by using a valid code. This evidence, viewed in a light most favorable to the Commonwealth, supports a finding that Appellant was not privileged to enter the home; that he was unable to enter through the front door because he did not have the code; and that he broke in through a window. Appellant's challenge to his burglary conviction fails.

Next, Appellant claims the record does not contain sufficient evidence in support of his criminal trespass conviction. Criminal trespass occurs where, among other circumstances, the defendant breaks into any building or occupied structure knowing he is not privileged to do so. 18 Pa.C.S.A. § 3503(a)(1)(ii). Once again, Appellant argues he was privileged to enter Shirlene's house. The argument fails for reasons we have already explained.

Finally, we consider Appellant's argument that the trial court erred in finding M.M. competent to testify. M.M. was seven years old at the time of the incident and eight years old at trial.

> Our standard of review recognizes that [a] child's competency to testify is a threshold *legal issue* that a trial court must decide, and an appellate court will not disturb its determination absent an abuse of discretion. Our scope of review is plenary.

> Every witness is presumed competent. Pa. R.E. 601(a). A party who challenges the competency of a minor witness must prove by clear and convincing evidence that the witness lacks the minimal capacity ... (1) to communicate, (2) to observe an event and accurately recall that observation, and (3) to understand the necessity to speak the truth.

*Commonwealth v. Pena*, 31 A.3d 704, 706–07 (Pa. Super. 2011).

The record reflects that Eugene spoke to M.M. prior to trial and that talking to Eugene helped him remember things. N.T. Trial, 7/22/15, a.m., at 65-66. Appellant argues that "[s]ince M.W. [sic] was apparently unable to remember the incident on his own and allowed his testimony to be potentially shaped by a fellow witness, his capacity to both observe and remember is in doubt." Appellant's Brief at 18. The trial court overruled Appellant's objection, explaining as follows: "[M.M.] said that it helps him to remember, doesn't say that it forms his memory." N.T. Trial, 7/22/15, a.m., at 65-66.

Defense counsel's examination of M.M. on this point went as follows:

    Q.    You talked to your dad about this man before today, correct?

    A.    Yes.

    Q.    Yes. A bunch of times, right?

    A.    Yes.

    Q.    You talked to your dad a lot?

    A.    Yes.

    Q.    Whatever happened with this man happened in December, right?

    A.    Yes.

    Q.    Little bit before Christmastime?

A.     Yes.

Q.     When you talked to your dad it helps you remember things, right?

A.     Yes.

Q.     Your dad talked with you about what happened with this man, right?

A.     Yes.

Q.     And that helps you remember things, right?

A.     Yes.

*Id.*

Appellant's argument, spanning less than two full pages of his brief, is that M.M. was not a competent witness in light of the foregoing exchange. Appellant's Brief at 17-18. Though Appellant does not say so explicitly, he apparently argues that M.M. was tainted. Our courts have defined taint as "the implementation of false memories or distortion of actual memories through improper and suggestive interview techniques." *Commonwealth v. Tyrell*, 177 A.3d 947, 953 (Pa. Super. 2018) (quoting *Commonwealth v. Delbridge*, 855 A.2d 27, 30 (Pa. 2003)). It relates to the second prong of competency analysis—accurate observation and recall. *Id.*

As the trial court noted, defense counsel established that M.M. discussed the matter with Eugene, not that M.M. had no independent recollection of an event of an event that occurred seven months prior to trial. Likewise, there is no clear and convincing evidence that Eugene distorted M.M.'s memory of the events in question. We therefore discern no abuse of discretion in the trial

court's finding that Appellant failed to establish, by clear and convincing evidence, that M.M. was tainted and not competent to testify.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/20