J-S24012-20

2020 PA Super 295

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
      Appellee   :
  :
      v.   :
  :
EVAN D. BALLARD,   :
  :
      Appellant   :   No. 2662 EDA 2019

Appeal from the Judgment of Sentence Entered August 5, 2019
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000845-2019

BEFORE:   BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:           **FILED DECEMBER 22, 2020**

Evan D. Ballard (Appellant) appeals from the August 5, 2019 judgment of sentence of one year of probation, imposed after he was convicted of access device fraud, 18 Pa.C.S. § 4106(a)(3), and identity theft, 18 Pa.C.S. § 4120(a). Appellant challenges the sufficiency of the evidence to sustain his convictions. After review, we reverse the judgment of sentence following his conviction for identity theft and affirm the judgment of sentence following his conviction for access device fraud.

We summarize the evidence presented at Appellant's non-jury trial as follows. The Commonwealth's first witness was Christopher Ruaine, a manager at a Giant Food Store in Delaware County. N.T. Trial, 7/3/2019, at 5. Ruaine testified that at approximately 2:00 p.m. on October 16, 2018, he was notified that there was suspicious activity occurring at the store's

_____

[*] Retired Senior Judge assigned to the Superior Court.

attached gas station. *Id.* at 6. When Ruaine arrived at the station, he observed "a black SUV being filled up with gas by the same individual that [they had] noticed other times pumping gas [into] multiple cars, [using] multiple cards." *Id.* Ruaine testified that after the individual successfully pumped gas into the black SUV, Ruaine directed the gas station attendant to shut off the pump where the SUV was parked. *Id.* The driver then moved the black SUV to another pump, and attempted to use that pump to put gas into a tan SUV. *Id.* However, Ruaine directed that the second pump be turned off, too. *Id.* at 7. He then called the police. *Id.* On cross-examination, Ruaine testified that he at no point saw Appellant at the gas station. *Id.* at 9.

The Commonwealth next called Haverford Township Police Officer Joseph Fuller to the stand, who had responded to Ruaine's call from the gas station. *Id.* at 11. The officer explained that there had been

> a yearlong … situation in which individuals with fraudulent credit cards pull up to a gas pump. One individual will stand there and just keep swiping the card and several vehicles will go through the same pump. And they'll fill up their vehicles, anywhere from one to, I think we've seen eight vehicles do it at one time.

*Id.* When Officer Fuller arrived at the gas station on October 16, 2018, he stopped "two individuals walking into the store [who] were suspects in this matter." *Id.* at 11-12. Those suspects were identified as Todd Williams (the driver of the tan SUV) and Michael Hawkins (the driver of the black SUV). *Id.* at 12. Officer Fuller asked if either of the men possessed any credit cards, and both provided the officer with several cards that, through later

investigation, were determined to be fraudulent. *Id.* at 12-13.

Officer Fuller testified that Hawkins also provided consent to search the black SUV, at which time the officer discovered Appellant inside that vehicle. *Id.* at 13. Appellant "was unable to give any credible information as to how he knew or did not know [] Williams or [] Hawkins." *Id.* at 13-14. Officer Fuller then asked if Appellant had any credit cards in his possession, and Appellant turned over five cards. *Id.* at 14. The officer testified that he scanned all five cards using a "credit card reader" that "uploads the information that[] [is] embedded in the magnetic strip and provides what number should be on the card and what name is associated with that card." *Id.* Officer Fuller testified that one of Appellant's cards "was listed to a Tavelle Wilson[,]" but when scanned, it returned a name of "Anthony Damino…." *Id.* at 15. Two of the cards listed Appellant's name, "but the numbers did not correspond to the numbers on the card." *Id.* at 15-16. The fourth card "was listed for [Appellant]" but could not be read, and the fifth card, "which [was] presented as a gift card, … returned to a Carol Adler with different credit card numbers." *Id.* at 16. The fact that the information on the cards did not match the scanner results indicated to Officer Fuller that the cards were fraudulent. *Id.* The officer acknowledged on cross-examination that no witness claimed to have seen Appellant pumping gas or swiping any credit card. *Id.* at 18.

At the close of Appellant's trial, the court convicted him of access device fraud and identity theft. On August 5, 2019, he was sentenced to concurrent terms of one-year probation for each crime. He filed a timely notice of appeal,

and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on November 20, 2019. Herein, Appellant states two issues for our review:

> I. Whether the [Commonwealth] presented insufficient evidence to support [Appellant's] conviction of Count 1, 18 Pa.C.S. § 4106(a)(3) (Access device fraud), where the government failed to prove beyond a reasonable doubt that [Appellant] possessed an "[a]ccess device" as defined under 18 Pa.C.S. § 4106(d), and especially where the government did not prove beyond a reasonable doubt that [Appellant] possessed a card on the date in question that "can be used alone or in conjunction with another access device to obtain money, goods, services or anything else of value or that can be used to transfer funds?"
>
> II. Whether the [Commonwealth] presented insufficient evidence to support [Appellant's] conviction of Count 2, 18 Pa.C.S. § 4120(a) (Identity theft), where the [Commonwealth] failed to prove beyond a reasonable doubt that [Appellant] possessed or used identifying information of another person?

Appellant's Brief at 4 (italicization omitted).[1]

Initially, we note that,

> [i]n reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, [is] sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14

---

[1] Although Appellant raised these issues (and several others) in his Rule 1925(b) statement, the trial court failed to address them in its Rule 1925(a) opinion. ***See*** Pa.R.A.P. 1925(b), 9/24/2019, at 2, 3; Trial Court Opinion, 11/20/2019, at 12 (stating, generally, that the evidence was sufficient to support both of Appellant's convictions). Therefore, we do not discuss the court's rationale for concluding that we should affirm Appellant's judgment of sentence.

A.3d133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant first challenges the sufficiency of the evidence to sustain his conviction for access device fraud under section 4106(a)(3), which states:

**(a) Offense defined.--**A person commits an offense if he:

\*\*\*

(3) possesses an access device knowing that it is counterfeit, altered, incomplete or belongs to another person who has not authorized its possession.

18 Pa.C.S. § 4106(a)(3). "An actor is presumed to know an access device is counterfeit, altered or incomplete if he has in his possession or under his control two or more counterfeit, altered or incomplete access devices." 18 Pa.C.S. § 4106(a.1)(1). Pertinent to Appellant's argument herein, the statute defines "access device" as: "Any card, including, but not limited to, a credit card, debit card and automated teller machine card, plate, code, account number, personal identification number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or anything else of value or that can be used to transfer funds." 18 Pa.C.S. § 4106(d).

Here, Appellant argues that the Commonwealth's evidence was insufficient to demonstrate that any credit card in his possession constituted

an access device as defined by section 4106(d). He insists that the statute's phrase, "can be used," required the Commonwealth to establish that the cards he possessed could have actually been used by him to acquire money, make a purchase, or transfer funds.[2] Appellant contends that the Commonwealth failed to meet this burden because no witness saw him use a card to pump gas or make any purchase. Additionally, he argues that the Commonwealth did not present any evidence that the cards he possessed "were associated with an actual account for accessing money or a line of credit[,]" or that they even "had the technological capacity to work [at] an ATM machine, a checkout register, a gas pump, or any other location." Appellant's Brief at 11. Accordingly, Appellant maintains that the Commonwealth did not establish his possession of an access device, and his conviction for access device fraud must be reversed.

Appellant's issue is one of first impression, and his argument involves statutory interpretation. Our review of such claims is well-settled:

> Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Hall***, … 80 A.3d 1204, 1211 ([Pa.] 2013).
>
> "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which

---

[2] To be clear, Appellant concedes that the Commonwealth is not "required under [s]ection 4106 to prove he actually used one of his cards and successfully acquired money, made a purchase[,] or transferred funds." Appellant's Brief at 12-13. Rather, he avers "that the statute's plain text requires that the prosecution establish only that the card he possessed had the capability to do so." ***Id.*** at 13.

provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." ***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 ([Pa.] 2009) (citation omitted).

***Commonwealth v. Torres-Kuilan***, 156 A.3d 1229, 1231 (Pa. Super. 2017) (quoting ***Commonwealth v. Popielarcheck***, 151 A.3d 1088, 1091 (Pa. Super. 2016)). To this end,

> [e]very statute shall be construed, if possible, to give effect to all its provisions. 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of legislative intent, and the words of a statute "shall be construed according to rules of grammar and according to their common and approved usage…." 1 Pa.C.S. § 1903(a). We generally will look beyond the plain language of the statute only when words are unclear or ambiguous, or the plain meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1); ***see also Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n***, 55 A.3d 1056, 1058 ([Pa.] 2012).

***Commonwealth v. Hall***, 80 A.3d 1204, 1212 (Pa. 2013) (some quotation marks omitted).

Section 4106(d) does not contain a provision requiring the device to be actually or technologically capable of working, and the plain meaning of "can be used" does not imply such a requirement. "Can" means "be inherently able or designed to" and is "used to indicate possibility."[3] Thus, a credit card is an access device because it is a card designed "to obtain money, good, services, or anything else of value" and/or designed "to

_____

[3] *Can*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/can (last visited October 30, 2020).

transfer funds." 18 Pa.C.S. § 4106(d). We discern no ambiguity or absurdity in application that would require us to look beyond the plain meaning of the statute. Indeed, to interpret section 4106(d) to require the prosecution to prove a card is capable of working at an ATM or cash register, for example, would produce the absurd result of penalizing individuals who cancel stolen or missing credit cards and absolving defendants who happen to have stolen from a prudent card-holder. Accordingly, because the Commonwealth has proven that Appellant possessed credit cards that either did not bear Appellant's name or had names and numbers printed on the cards that did not correspond with the data embedded in the magnetic strip of the card, there was sufficient evidence to support Appellant's conviction for access device fraud.

Appellant next challenges the sufficiency of the evidence to sustain his conviction of identity theft. "A person commits the offense of identity theft of another person if he possesses or uses, through any means, identifying information of **another person** without the consent of that other person to further any unlawful purpose." 18 Pa.C.S. § 4120(a) (emphasis added). Appellant contends that "the statute requires proof that the defendant possessed or used identifying information that belonged to 'another person[,]'" meaning a real human being. Appellant's Brief at 13 (citations omitted). In support of this argument, Appellant relies on **Commonwealth v. Newton**, 994 A.2d 1127 (Pa. Super. 2010). There, Newton was convicted of identity theft based on her using the fake name, "Bruton Cole," to illegally

purchase computers. *Id.* at 1135. We concluded that to sustain Newton's conviction, the Commonwealth was required to prove that "the name 'Bruton Cole' [was] the identity of a real person." *Id.* We reasoned:

The Statutory Construction Act defines a "person" as:

> "PERSON." Includes [*sic*] a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person.

1 Pa.C.S.[] § 1991. More to the point, "[a] person is defined as a living human being, especially as distinguished from an animal or a thing." *Commonwealth v. Lawson*, 759 A.2d 1, 4 (Pa. Super. 2000). Moreover, a plain reading of the statute indicates that it is designed to prohibit the malicious use of identifying information such as actual names, account numbers, identification numbers, and the like.

*Id.* (footnote omitted). The *Newton* panel then held that the evidence was insufficient to prove that Newton had committed identity theft:

Here, the Commonwealth presented no evidence whatsoever indicating that Bruton Cole was a living human being (or other "person" as defined by the Act and case law). It appears from the record that Bruton Cole was merely a fictitious name, not a specific person with real identifying information. Because the Commonwealth had the burden to prove every element of the crime beyond a reasonable doubt, and failed to do so, we vacate the conviction and judgment of sentence for identity theft.

*Id.* at 1135–36 (footnote omitted).

The Commonwealth presently contends that "the instant matter is distinguishable from *Newton* because Newton admitted the name 'Bruton Cole' was fake and, therefore, there was affirmative evidence that [Newton] used a 'fictitious name' to ship stolen goods." Commonwealth's Brief at 13.

According to the Commonwealth, "[b]y contrast, here, the credit card reader/scanner indicated that the cards were registered to Anthony D[a]mino and Carol Adler; and neither [Appellant] nor the card reader/scanner indicated that these were fictitious identities." ***Id.***

The Commonwealth's argument is unconvincing. Our decision in ***Newton*** clarifies that it was not Appellant's burden to disprove that the names associated with the cards he possessed were actual people; rather, it was the Commonwealth's burden to prove that those names belonged to real human beings. ***See Newton***, 994 A.2d at 1135 ("The question then becomes whether the Commonwealth must establish that the name 'Bruton Cole' is the identity of a real person. We readily hold that this is a requirement."). As Appellant stresses, "the prosecution presented no evidence — direct or circumstantial — to suggest the names on the police scanner are real, living people with actual bank or credit card accounts. Rather, it is at least as likely [that] someone artificially generated the names and account numbers." Appellant's Reply Brief at 10. We agree with Appellant's interpretation of our holding in ***Newton***, as well as with his assertion that the evidence was insufficient to prove that he stole the identity of "another person." Accordingly, we reverse his conviction for identity theft.

Judgment of sentenced affirmed in part and reversed in part.

Judge Stabile joins this opinion.

- 10 -

President Judge Emeritus Bender files a concurring and dissenting opinion.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/22/2020</u>